Jones, Judge,
delivered the opinion of the court:
On March 7, 1936, the plaintiff, a resident of Logansport, Indiana, submitted his bid for the construction work in con *73 nection with the extension and remodeling of United States Post Office and Courthouse at Quincy, Illinois.
On April 3, 1936, plaintiff’s bid was accepted, a contract •drawn and executed by the defendant and together with a performance bond mailed to the plaintiff. He received it about April 6 and within two weeks executed and returned it, with the bond, to the defendant. On April 20 he was notified that his bond had been accepted and was advised that notice to proceed would be issued at a later date.
The contract was to be completed within 300 calendar days after receipt of such notice, the contract price being $172,790.00. Two small additions were made which called for extra work and as a consequence the time fixed for the period of completion was changed to 330 days and the total contract price increased to $174,669.85.
The notice to proceed was mailed to Plaintiff August 15 and received by him August 17, 1936.
Plaintiff alleges that there was an unreasonable delay in the issuance of such notice and that extra costs were occasioned thereby. For these alleged additional costs and expenses plaintiff instituted this suit.
The question is whether in the facts and circumstances of the case there was an unreasonable delay in the issuance of the notice to proceed.
At the time the contract was entered into the premises were occupied and being used as a post office and courthouse. Before the work of extending and remodeling could begin it was necessary to secure temporary quarters for these activities of the Government.
Some time prior to January 28, 1936, the defendant, through the Public Buildings Administration, issued invitations for proposals in accordance with certain specifications for temporary quarters for the post office and other Federal offices then occupying the post office and courthouse building which was to be remodeled and enlarged.
Bids for such temporary quarters were opened January 28, 1936, and an engineer from the office of the Public Buildings Administration and an inspector from the Post Office Department were promptly designated to examine the property offered by the bidders. A report with their recommendation was made February 14, 1936.
*74 Three bids had been received. Each of these bids was in excess of the amount which could legally be paid under the provisions of the Economy Act, which was in effect at that time, and which limited the amount of rental that could be paid in proportion to the valuation of the property to be rented. (U. S. Code, Title 40, section 40a.)
After negotiations these bidders refused to reduce their bids and on March 16,1936, withdrew them.
New bids were invited and on April 2, 1936, two new proposals and one revision of one of the original proposals were submitted to the defendant. The Post Office Inspector' examined the property and submitted his report and recommendation to the Public Buildings Administration April 22, 1936. It was found that one of the proposals lacked certain information called for by the invitation for bids. When this additional information was obtained and analyzed it was found that the rental called for exceeded the limit which the defendant was authorized to pay under the terms of the Economy Act. The bidder Avas asked to revise the rental to conform to the Economy Act limitation, which he did on May 5, 1936, and on May 16, 1936, the revised bid, which related to the property considered most desirable by the defendant, was accepted. The accepted bid provided for a period of 60 days after acceptance or until July 16, 1936, for the making of the necessary alterations in the property by the bidder in order to make it suitable for occupancy for the purposes indicated. On July 16 the necessary alterations in the building had not been completed and it was found that an additional 30 days’ time would be required to complete such alterations and repairs in order to make the building ready for occupancy.
The defendant by letter urged prompt delivery of the temporary quarters and they were made ready for occupancy on August 17, 1936. On that date the post office and other offices moved out of the building to be remodeled and entered the temporary quarters thus provided.
On August 15, 1936, a written notice to proceed with the work called for by the contract was sent to the plaintiff, received and accepted by him on August 17, 1936, in the following language.
Receipt is hereby acknowledged of your letter dated August 15, 1936, giving me notice to proceed with my *75 contract for the above-mentioned project, which was received today.
You are advised that I expect to start actual construction work on this project next Monday, August 24, 1936.
The plaintiff was thoroughly familiar with all these conditions, as well as the efforts of the defendant to arrange for temporary quarters so that notice to proceed might be given. He was charged with knowledge of the general law requiring competitive bidding, as well as the limitations in the Economy Act which had been in effect since prior to the time when the bids were called for.
No representation or promise was made by defendant to plaintiff, either before or after his bid was submitted, that the post office building would be vacated at any definite time. On the contrary, he was fully advised that the post office building could not be vacated nor work begun until adequate temporary quarters could be obtained and made ready for occupancy.
Plaintiff contends that Paragraph 20, page 3, of the specifications, required the defendant to vacate the premises during the life of the contract, and that this placed a binding obligation upon the defendant to give immediate possession. Paragraph 20 reads as follows:
VaoatioN of PREMISES. — The Government will vacate the premises during the life of the contract hereunder. The contractor shall be responsible for the proper care and protection of the premises and be responsible for all damages to persons or property that occur as a result of his fault or negligence.
When read in its entirety it is manifest that the primary purpose of this paragraph is to fix the responsibility for the proper care of the premises and for damages to persons and property during the period of operations. It is notice that since the Government will vacate the premises, the responsibilities above mentioned will naturally fall upon the contractor. But even if the paragraph is construed as an obligation on the part of the Government to vacate the premises, the phrase “during the life of the contract hereunder” meant the period between the date on which the plaintiff was entitled to receive notice to proceed and the *76 completion of tbe work called for in the contract and specifications.
The parties could not have meant that the premises would be vacated immediately upon signing the contract. At the time the contract was signed both parties knew that temporary quarters had not been secured. They both knew and the contract provided that work should not begin until notice to proceed had been given. Certainly there was no obligation on the part of the Government to vacate the premises until a reasonable time had been allowed within which to give such notice. Therefore, the whole case comes, back to the question of whether the notice to proceed was given within a reasonable time.
It has been uniformly held by the court that the question of what constitutes a reasonable time is wholly dependent upon the facts and circumstances of the particular case.
The delay was unfortunate, but we believe that the officials and employees of the defendant did everything that was reasonably possible in the circumstances and under the-limitations of the law to hasten the time when notice to proceed could properly be given.
A search of the record fails to disclose any fault on the-part of the defendant or any of its employees. It would have been wholly improper as well as impracticable to issue notice to proceed with the work until proper temporary quarters had been arranged for essential activities of the Government. The only way to procure such quarters was to» pursue the method required by the statutes and conform to the limitations therein set out. The employees of the Government began their efforts to secure temporary quarters, more than two months before plaintiff’s bid was submitted, and pursued the matter diligently. The record not only fails to reveal any fault on their part, but affirmatively shows that they took no more time than was reasonably necessary to do the things that were required by law, and', that they gave notice to proceed on the very day that the-temporary quarters were ready for occupancy.
It is possible that the defendant as well as the plaintiff was damaged by the delay necessarily incurred in complying; with the terms of the law, but in the circumstances there-. *77 was no unreasonable delay for which defendant can be held legally responsible.
It follows that plaintiff’s petition should be dismissed.
It is so ordered.
Madden, Judge; Whitaker, Judge; Littleton, Judge? and Whaley, Chief Justice, concur.