NATIONAL MOVERS CO. Inc.
v.
The UNITED STATES.
No. 428–65.

United States Court of Claims.
Nov. 9, 1967.

Arthur Liberstein, New York City, for plaintiff. Herbert Burstein, New York City, attorney of record. Zelby & Burstein, New York City, of counsel.

Mary M. Schroeder, Washington, D. C., with whom was Acting Asst. Atty. Gen., Carl Eardley, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DURFEE, Judge.

The controversy here involves an alleged contract between National Movers Co., Inc. (hereafter referred to as "National"), and the General Services Administration (hereafter referred to as "GSA"). The Government terminated the alleged contract on the ground that plaintiff failed to perform according to the terms of the contract. The Government then awarded the contract to the second lowest bidder, and charged the termination costs to plaintiff. National unsuccessfully challenged the termination of the alleged contract before the GSA Board of Contract Appeals (hereafter referred to as the "Board").

National here asks to be relieved of the termination costs on the ground that a valid contract was never made, and in the alternative, seeks damages for breach of contract, alleging that defendant did not allow plaintiff to render performance.

There are only two issues in this case: (1) Whether a contract, which requires

offer and timely acceptance, was in fact made. The specific question which resolves this issue is whether defendant's notice of award was timely under the circumstances; (2) Whether the contract was breached by either party. The resolution of this issue turns on whether a reasonable man under the circumstances would interpret National's communications of June 6 and 8, 1964, as a refusal to perform; that is, a repudiation of the contract.

We hold that a contract was made, and that contract was breached by plaintiff's refusal to perform, thereby justifying defendant's termination of the contract.

■ It should be pointed out in passing that this case must be decided on the basis of the administrative record developed before the Board below. Plaintiff's claim in this court is based on the same facts presented to the Board. Although the Board below did not have jurisdiction to award damages as requested by plaintiff, the Board did have jurisdiction to relieve plaintiff of liability under the Default Clause (11) of the contract. Thus, the factual findings of the Board are final and conclusive, unless shown to be arbitrary, capricious and unsupported by the evidence. Wunderlich Act, 41 U.S.C. § 321; United States v. Utah Construction & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); accord, United States v. Carlo Bianchi & Co., Inc., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed. 652 (1963).

The sequence of events in this case is very important in that the precise time of acceptance and performance goes to the heart of plaintiff's case. The facts which generate this controversy are as follows:

On May 28, 1964, the Government, through GSA, issued an Invitation to Bid on a contract to move uncrated, new furniture from Raritan Arsenal, New Jersey, to the Office of the Internal Revenue Service at Brooklyn, New York. The Invitation provided that the bids would be opened at 11 a. m. on June 3, 1964, and that "work was anticipated to begin on or about the following Monday, June 8, 1964."

On Wednesday, June 3, 1964, the same day the bids were opened, defendant notified National it was low bidder, and requested plaintiff to furnish a copy of its current financial statement. National delivered its financial statement a day later, on the afternoon of Thursday, June 4. Defendant approved the financial statement and executed the contract on Friday, June 5. At about 3 p. m. Friday, June 5, defendant telephoned plaintiff to inform it of the award. One of plaintiff's representatives replied that plaintiff could not perform. Several other telephone calls took place between the parties that afternoon. During one of these calls, plaintiff's Vice President stated that plaintiff could not perform because the award had not been made the day before. No request to begin work on Tuesday, or for that matter, on any other day that week, was made by National.

At 4:30 p. m. Friday, June 5, after the parties had communicated by telephone, the Contracting Officer delivered to Western Union a telegram for transmittal to National. Such telegram, which confirmed the telephone conversations and recited that the contract had been awarded to plaintiff, was delivered the following day by TWX. On June 8th at 8:40 a. m. the Contracting Officer again called plaintiff's office and spoke with its Vice President. During their conversation, he again advised the Contracting Officer that plaintiff would not perform.

That same morning the Contracting Officer received a telegram from National stating, "As per your request, we are advising you via Western Union that we received your authorization too late to comply with terms and conditions on Invitation 187–64–TCS." Thereafter, the Contracting Officer by certified letter dated June 8, 1964, advised plaintiff that its right to proceed under the contract was terminated, and that plaintiff would be held liable for any excess costs to the Government growing out of the termination action.

Also on June 8th, the Contracting Officer negotiated a contract with another firm to perform the required services for $15,800. The damages arising out of National's breach of contract are $3,-838.00, representing excess costs incurred.

The first issue to be decided is whether a contract was in fact made. This issue was not decided by the Board below, although the facts on which we base our conclusion were found by the Board, and are supported by substantial evidence.

· ■ The question relevant to the resolution of this issue is whether defendant's notice of award was timely. The question of what constitutes a reasonable time has been uniformly held to be wholly dependent upon the facts and circumstances of the case. See Barnes v. United States, 96 Ct.Cl. 60 (1942). It is important to remember that the total time period between the opening of bids and time of performance was only five days. It was found by the Board as a matter of fact that plaintiff was notified of the acceptance of its bid on Friday afternoon, June 5th, only two days after the opening of the bids. Moreover, approximately half that time was consumed while the Government waited for plaintiff to present its financial statement, which was a pre-award condition of the contract. This court would be hard pressed to disagree with the Board on this issue, and find that two days constituted an unreasonable delay under these circumstances. In fact, plaintiff does not disagree with the Board's finding that the Government acted promptly in making the award, but rather it argues that three days (including one business day) is not sufficient time to make the necessary arrangements to render performance under the contract. Plaintiff's position in essence seems to be that reasonableness of the delay must be measured from its standpoint alone, and not the circumstances of both parties. Assuming arguendo that a court should define reasonableness from the viewpoint of only one of the parties (a position with which we disagree) we still do not under-

stand why three out of a possible five days is not sufficient time to make the arrangements necessary for executing the contract. We are impressed by the fact that another contractor, Orange Storage Warehouse, was able to begin work within a few *hours* after the contract was relet on Monday, June 8th. In addition, two other contractors with which defendant negotiated for the reletting of the contract also agreed to start work on Monday June 8th, after only several *hours* notice.

Plaintiff's sole excuse for refusal to perform is based on an alleged inability to obtain workmen from the Union for Monday. In fact, however, plaintiff had been guaranteed workmen ready to work on Monday morning as late as Friday. Plaintiff, however, on its own initiative, cancelled the request for men at noon on Friday, approximately three hours before notification of the award. Consequently, it is only proper that the consequences of its subsequent inability to obtain men should be borne by itself. Responsibility cannot be shifted to defendant because of its own erroneous judgment.

For these reasons, we conclude that the award was timely under all the circumstances and a binding contract was made. Since we find that there was a contract, we must now proceed to the issue of whether that contract was breached.

Plaintiff alleges that defendant unlawfully terminated the contract, thereby preventing plaintiff from rendering performance. Defendant, in turn, alleges that it terminated the contract because plaintiff was not willing and able to comply with the terms and conditions of the contract. The resolution of this issue, then, turns solely on plaintiff's willingness to perform.

This question can only be answered by recourse to plaintiff's communications with defendant on Friday, June 5th and Monday, June 8th. The telegram sent by plaintiff on the Monday morning when performance was due, adequately represents the sum and substance of plaintiff's objective intent. "As per your re-

quest, we are advising you via Western Union that we received your authorization too late to comply with terms and conditions on Invitation 187–64–TCS." The Contracting Officer was entitled to accept the words of National's representatives as evidencing a positive and unconditional intention not to perform at any time.

Plaintiff now attempts to argue that it really had meant that it would not perform only on Monday; it would perform thereafter if given the opportunity. This argument, unfortunately, is not in accord with the facts found by the Board. The Board found that plaintiff "never made any attempt to ascertain whether the Government in view of the closeness of time, would permit work to begin at a later date and continue for a longer time." (Board Decision p. 7, para. 2.) This fact is significant in light of plaintiff's burden in a breach of contract case to demonstrate its willingness and ability to perform. See, United States v. Penn Foundry & Mfg. Co., 337 U.S. 198, 69 S.Ct. 1009, 93 L.Ed. 1308 (1949); Potter et al. v. United States, 167 Ct.Cl. 28 (1964), cert. denied 382 U. S. 817, 86 S.Ct. 42, 15 L.Ed.2d 64 (1965). There was no finding of willingness in this case even though defendant gave plaintiff ample opportunity.

Since we find that the Contracting Officer was reasonable in interpreting plaintiff's message as an unqualified refusal to perform, we do not have to reach the question raised during oral argument whether the contract required performance on Monday as a material term.

We conclude that plaintiff's refusal to perform constituted a breach which under the Default Article entitled defendant to terminate the contract and assess costs.

Defendant's motion for summary judgment is granted, and plaintiff's petition is dismissed. Judgment is entered for defendant on its counter-claim in the amount of three thousand eight hundred thirty-eight dollars ($3,838.00).