**MID–WEST CONSTRUCTION, LTD.**

v.

**The UNITED STATES.**

**No. 123–66.**

United States Court of Claims.

Dec. 15, 1967.

As Amended Feb. 2, 1968.

David V. Anthony, Washington, D. C., for plaintiff; Henry B. Keiser, Washington, D. C., attorney of record. Sel-

lers, Conner & Cuneo, Washington, D. C., of counsel.

James F. Merow, Washington, D. C., with whom was Acting Asst. Atty. Gen., Carl Eardley, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

DAVIS, Judge.

Plaintiff, a Canadian corporation, submitted a bid for the construction of a road near Petersburg, Alaska, in response to an invitation with a total small business set-aside issued by the Forest Service of the Department of Agriculture in May 1964. (A total small business set-aside means that the entire award is to go to a "small business.") After the bids were opened in June and plaintiff's was determined to be low, the next low bidder, B & A and Yutan Construction Company (Yutan), protested that Mid-West was not a "small business" under 13 C.F.R. § 121.3–2(g) (1963), which requires an otherwise eligible "concern" to have "a place of business located in the United States * * *" in order to qualify. The contracting officer forwarded the protest to the nearest regional office (Seattle) of the Size Standards Division, Small Business Administration (SBA). The Seattle office's decision in favor of plaintiff was affirmed in the District of Columbia on July 13 by the Acting Director of the Size Standards Division.

On July 14th the contracting officer telegraphed Mid-West that its bid had been accepted. On the same day, Yutan notified the contracting officer that it was filing an appeal of the Acting Director's ruling with the Size Appeals Board of SBA. A few days later it also protested the contract award to the Comptroller General. The contracting officer replied to Yutan on July 14 that he had awarded the contract to plaintiff because "any further delay in the procurement action of IFB No. 1–64–18 [the

award in issue] would be disadvantageous to the Government."

On August 28 the Size Appeals Board issued an opinion, adopted by the SBA Administrator, that plaintiff failed to qualify. The Comptroller General, agreeing with the Appeals Board, recommended that plaintiff's contract be canceled. See 44 Comp.Gen. 253 (1964) (No. B–154756). The acting contracting officer notified Mid-West by a letter of December 7th that its contract was canceled as an erroneous award. (It is important to note at once that the contract did not contain a termination-for-convenience article.)

Even before December 7th, plaintiff, dissatisfied with the decision of the Size Appeals Board, filed suit in the United States District Court for Alaska against the SBA Administrator, the Chief of the Forest Service, and the contracting officer, demanding a declaratory judgment that the Board's determination was invalid, and seeking temporary and permanent injunctions to restrain the defendants from making an award to anyone other than plaintiff. Midwest Constr. Co., Ltd. v. Foley, Civil No. J–2–64 (D. Alaska, filed Sept. 11, 1964). In March 1965 the court ordered the complaint amended to state that it was a suit to review an administrative proceeding under Section 10 of the Administrative Procedure Act as amended, 5 U.S.C. §§ 701–706 (1965–66 Supp. II), and directed plaintiff to serve upon the defendants "a designation of the administrative [Appeals Board] record to be reviewed." Upon plaintiff's failure to comply with that directive, the court (in June 1965) dismissed the action under F.R.Civ.P. 41(b).

After the cancellation of its contract, plaintiff also sought administrative relief. Contending that the Government was in total default, it submitted a claim for damages to the contracting officer in March 1965. That officer concluded that he lacked jurisdiction to consider it. Mid-West appealed, and in January 1966 the Department of Agriculture Board of Contract Appeals, with the company's

consent, dismissed the appeal for want of jurisdiction.[1]

Plaintiff then filed its petition in this court, claiming that the contract was legally binding on the Government (and, therefore, its attempted disavowal was a breach) because the contracting officer had the authority to make an award no matter what the outcome of Yutan's appeal to the Size Appeals Board, and, alternatively, because Mid-West was in fact a small business at the time of the award (and, therefore, the decisions of the Board and the Comptroller General to the contrary were erroneous and invalid). Defendant has responded by moving for summary judgment.

We start by putting wholly to one side plaintiff's secondary argument (that it was in fact a qualified "small business"), and all the points and counterpoints that follow upon that theme. As we see the case, it makes no difference whether or not (a) plaintiff was an eligible bidder, (b) the Size Appeal Board's determination was erroneous or invalid, (c) SBA's determinations of eligibility are subject to judicial review in any forum, (d) the Alaska District Court had jurisdiction to consider plaintiff's suit there, and (e) that court's dismissal of Mid-West's action, with prejudice, is binding here on the question of the validity of the administrative determination of size. We can assume, without in any way deciding, that plaintiff was actually not qualified, that the Board's adverse holding was correct, that we cannot review the legality of that ruling, and that in any event the District Court's action conclusively rules, for this case, that Mid-West was not in fact eligible.

We clear the decks in this way because, for us, the case turns entirely on the question whether the contracting officer was authorized, in the circumstances, to make the award to plaintiff even though the company was not truly a "small business." That narrow issue of contracting authority is governed by the pertinent regulations, which we must sketch in some detail. There are two sets—the Small Busines Administration Regulations (SBAR) and the Federal Procurement Regulations (FPR)—which interconnect and have equal bearing.[2]

The regulations each provide that bids for set-asides received from firms not qualifying as small businesses (as defined in the Small Business Act, 15 U.S.C. §§ 631–647 (1964, 1965 Supp. I, 1965–66 Supp. II), and the regulations under it) are to be rejected as nonresponsive. 13 C.F.R. § 127.15–2 (1963) (SBAR); 41 C.F.R. § 1–1.706–5 (1964) (FPR). But this generality must be read together with other sections dealing specifically with the procedures for determining small business status and the effect of those determinations (or lack thereof) on federal procurement activity. The SBA regulations say, for instance, that "[i]n the absence of a written protest or other information which would cause him to question the veracity of the self-certification [by the bidder in its bid that it qualifies as a small business], the contracting officer shall acept the self-certification at face value for the particular procurement involved." 13 C.F.R. § 121.3–8(d) (1963). Under the FPR the officer, if there is no protest, is to accept the representation "as conclusive for the purpose of a specific procurement." 41 C.F.R. § 1–1.703–1 (1964).[3]

1. Defendant agrees that this was proper and that the Board of Contract Appeals had no competence to deal with the matter.

2. The SBAR are promulgated by the Administrator of the Small Business Administration pursuant to authority granted by the Small Business Act, 15 U.S.C. § 634(b) (6) (1964). The General Services Administration issues the FPR, by authority of the Federal Property and Ad-

ministrative Services Act of 1949, 40 U.S.C. § 486(c) (1964), for use in all government contracting except some aspects of that by the Department of Defense. See 41 C.F.R. § 1–1.004(1967).

3. The self-certification must be in good faith (see 41 Comp.Gen. 47 (1961) (No. B–144621)), a requirement expressly stated in a 1965 change in the FPR (see 41 C.F.R. § 1–1.703–1(b) (1967)).

According to both sets of regulations, "any responsive bidder or offeror may, prior to the award, question the small business status of any apparently low bidder or offeror" by filing a written protest with the responsible contracting officer, who is directed to forward it to the nearest SBA regional office. 13 C.F.R. § 121.3–5(a) (1963) (SBAR); 41 C.F.R. § 1–1.703–2(a) (1964) (FPR). Any protest made after an award is ignored. See 13 C.F.R. § 121.3–2(p) (1963) (SBAR); 41 C.F.R. § 1–1.703–2(b) (1964) (FPR). If the protest is timely, the SBA must determine the protested firm's qualifications and notify it of the decision "within ten working days, if possible." 13 C.F.R. § 121.3–5(c) (1963 & Supp.); 41 C.F.R. § 1–1.703–2(d) (1964) (FPR). The contracting officer "shall accept as conclusive the Administration's determinations as to which enterprises are to be designated 'small-business concerns' * * *." Small Business Act, 15 U.S.C. § 637(b) (6) (1964).

The 1964 version of the FPR (applicable here) does not explicitly refer to recourse to any tier above the SBA regional office;[4] the Small Business Administration's regulations do. Under the latter an interested party may seek reconsideration of the regional director's decision by the Director of the Size Standards Division. See 13 C.F.R. § 121.3–4(d) (1963). The Director's decision is "final", except that it may be appealed to the Size Appeals Board of the SBA within five days (in the case of a "pending procurement") of receipt by the appellant of the Director's determination. See 13 C.F.R. §§ 121.3–4(d) (2), 121.3–6(b) (1963). Other interested parties have five days from their receipt of the notice of appeal to present statements and supporting evidence to the Board, which, at its option, may allow oral argument. See 13 C.F.R. § 121.3–6(d), (e) (1963). Once the Board has made a recommendation to the Administrator and he has acted upon it, the chairman of the Board is to "promptly notify" the appellant and all interested parties of the decision. 13 C.F.R. § 121.3–6(g) (1963).

Finally, the Federal Procurement, but not the SBA, Regulations contain the following paragraph, the interpretation of which we view as the key to this case:

Procurement action shall be suspended pending SBA's determination or expiration of the 10-day period whichever is earlier, unless unusual conditions make it necessary that an award be made. If SBA's determination is not received by the contracting officer within 10 working days after SBA's receipt of the protest, the contracting officer shall ascertain when such determination can be expected. In cases where further delay in awarding the contract would be disadvantageous to the Government, it shall be presumed that the questioned bidder or offeror is a small business concern. [41 C.F.R. § 1–1.703–2(e) (1964).]

---

4. In 1965 two sentences were added to paragraph "d" and a new paragraph "f" was included:

"(d) SBA will, within 10 working days, if possible, after receipt of a protest, investigate and determine the small business status of the protested bidder or offeror and notify the contracting officer, the protestant, and the protested bidder or offeror of its final decision. Such decision is final unless appealed in accordance with paragraph (f) * * * and the procuring activity is notified of the appeal prior to award. If an award was made prior to the time the contracting officer receives notice of the appeal, the contract shall be presumed to be valid and any determination rendered shall be considered in future procurements."

"(f) An appeal from a size determination made by an SBA Regional Director may be taken before the close of business on the 5th working day after the receipt of such decision. Unless such written notice of appeal is received by the SBA Size Appeals Board, Washington, D.C., within this time and the contracting officer has been notified of such appeal prior to award, the appellant will be deemed to have waived its rights of appeal insofar as the pending procurement is concerned." 41 C.F.R. § 1–1.-703–2(d), (f) (1967).

Defendant's broadest assertion (on this facet of the litigation) is that, since both regulations (FPR and SBAR) require contracting officers to reject, as nonresponsive, bids from unqualified bidders and since the Small Business Act directs those officers to accept, as conclusive, the SBA's size determinations, the contracting officer had no authority to award the contract to Mid-West because, by the conclusive finding of the SBA Size Appeals Board and the Administrator, the company was not a qualified small business. To avoid this, defendant argues, Mid-West would have to show that the contracting officer's determination of its status was conclusive, an impossible task since, as defendant correctly maintains, the FPR and SBAR give the contracting officer no decision-making role in size determinations.

But that does not end the matter, for plaintiff can prevail if the contracting officer had power to make an award regardless of whether Mid-West was in fact a "small business".[5] Defendant errs in citing Prestex Inc. v. United States, 320 F.2d 367, 162 Ct.Cl. 620 (1963), as holding that a contracting officer never has such authority. *Prestex* does stand for

the proposition that a contracting officer is usually not empowered to accept a bid that very substantially deviates from the invitation. "A substantial deviation is defined as one which affects either the price, quantity, or quality of the article offered * * *" and which is "at such variance with the advertised proposals as to nullify them." 320 F.2d at 372,[6] 162 Ct.Cl. at 626–627.

Nothing in *Prestex*, however, precludes the possibility that a contracting officer may be granted the authority to make an award to an otherwise unqualified bidder in certain situations. In Otis Steel Prods. Corp. v. United States, 316 F.2d 937, 940, 161 Ct.Cl. 694, 699–700 (1963), we held that the SBA and Armed Services Procurement Regulations on awarding small business set-asides in the absence of a protest[7] contemplated a binding award to the bidder "whether it was one [a small business] in fact or not."[8] Cf. Coastal Cargo Co. v. United States, 351 F.2d 1004, 173 Ct.Cl. 259 (1965).

The Government appears to concede that this much is implicit in the regulation, similar to that in *Otis*, providing for a conclusive assumption of small

5. There is not, and could not be, any question of apparent authority. E.g., Whiteside v. United States, 93 U.S. 247, 256–257, 23 L.Ed. 882 (1876) ; Arthur Venneri Co. v. United States, 180 Ct.Cl. ——, ——, 381 F.2d 748, 750 (1967).

6. In *Prestex*, the contracting officer, in accepting the plaintiff's bid, did not exercise any discretion to decide, on the basis of the known facts, that there was no such substantial deviation. Because of the cryptic nature of the bidder's exception, the officer did not realize that the bid was quite unresponsive (or could be said to be so) and therefore he failed to see that there was any problem at all. See 320 F.2d at 369–370, 371, 162 Ct.Cl. at 623, 625. Moreover, the plaintiff's gross departure was unmistakably plain once the facts were revealed. Id., 320 F. 2d at 370–371, 372–373 at 623–624, 627.

In a series of cases beginning with John Reiner & Co. v. United States, 325 F.2d 438, 163 Ct.Cl. 381 (1963), cert. denied, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964), the court has held that, where the contracting officer has adverted to

the issue which gives rise to the problem, "has viewed the award as lawful, and it is reasonable to take that position under the legislation and regulations, the court should normally follow suit" and should "impose the binding stamp of nullity only when the illegality is plain." 325 F.2d at 440, 163 Ct.Cl. at 386; see Brown & Son Elec. Co. v. United States, 325 F.2d 446, 163 Ct.Cl. 465 (1963); Warren Bros. Roads Co. v. United States, 355 F.2d 612, 173 Ct.Cl. 714 (1965); Coastal Cargo Co. v. United States, 351 F.2d 1004, 173 Ct. Cl. 259 (1965).

7. The regulations involved were substantially the same as SBA Regulation § 121.3–8 and Federal Procurement Regulation § 1–1.703–1, which are quoted supra.

8. Any notion that the *Otis* rule is limited to cases in which the bidder rather than the Government is trying to avoid the contract is dispelled by the court's statement that, "[i]n the absence of fraud [or bad faith, or the like], defendant was equally bound on the contract with plaintiff." 316 F.2d at 940, 161 Ct.Cl. at 699.

business status in the absence of a protest, as well as the provision calling upon the contracting officer and the SBA to ignore a protest filed after an award. In each instance the award is binding on the Government even though the bidder, in fact, may not be a small business. Cf. 9 C.C.F. § 72601 (1964) (No. B–153780); 41 Comp.Gen. 252 (1961) (No. B–146438). The crux of the argument, therefore, is not that a contracting officer can never award a contract to an unqualified, or nonresponsive, bidder but that the exceptional authority, granted in the no-protest and the late-protest situations, does not exist when the SBA, pursuant to the procedures outlined in its regulations, determines after the award that a bidder is not a small business.[9]

We find a comparable exception in 1.1–703—2(e) of the Federal Procurement Regulations—quoted above. The critical sentences are: "If SBA's determination is not received by the contracting officer within 10 working days after SBA's receipt of the protest, the contracting officer shall ascertain when such determination can be expected. In cases where further delay in awarding the contract would be disadvantageous to the Government, it shall be presumed that the questioned bidder or offeror is a small business concern." As we understand this section, the contracting officer is expressly granted authority to accept a bid, even though the SBA might subsequently determine the bidder to be

unqualified, if the delay in awaiting the ultimate SBA determination would be disadvantageous to the Government. In other words, if the SBA has had a 10-day period in which to rule on eligibility but has not yet acted finally, and if a speedy procurement is found necessary, the contracting officer may make a binding and valid award without waiting for the final SBA determination.[10]

Defendant denies this reading primarily on the ground that the phrase, "it shall be *presumed* that the questioned bidder or offeror is a small business concern" (emphasis added), merely means that the contracting officer may accept a rebuttable presumption that the bidder qualifies, a presumption which will be overcome by any subsequent SBA determination to the contrary. "Presumed" is, of course, a Joseph's-coat word, with a "rebuttable inference" as one of its several tones—but another common usage is a "conclusive presumption" in which a particular fact, status, or quality cannot be refuted or, more accurately, its actual existence is thereafter held to be irrelevant. In this context "presumed" is the same as "deemed"; both words mean that one thing is to be taken as the equivalent of another, regardless of a possible discordance in fact. This latter interpretation makes greater sense here. Especially where delay would be disadvantageous to the Government, there would be little point in allowing the

9. The Comptroller General has declined, on occasion, to cancel contracts despite the SBA's post-award determination that the bidder was not eligible. See 8 C.C.F. § 71574 (1961) (B–145948). Compare 9 C.C.F. § 72776 (1964) (No. B–154453); 9 C.C.F. § 72697, (1964) (No. B–154428); 34 Comp.Gen. 115 (1954) (No. B–121145).

10. There is nothing in the paragraph which confines this authority to the period prior to a determination by the SBA regional office (or other low-level determination), and it would be extraordinary to limit it in that fashion since injurious delay can more readily be found the longer the SBA takes to make its ultimate determination. It is significant that the

Federal Procurement Regulations on protests as to small business status treat the SBA as a unit and do not distinguish between the layers of authority within that agency. Paragraph (d) of § 1–1.-703–2 (immediately preceding the paragraph (e) in question) declares flatly that "*SBA* [not merely the regional office or the Size Standards Division] will, within 10 working days, if possible, after receipt of a protest, investigate and determine the small business status of the protested bidder or offeror and notify the contracting officer, the protestant, and the protested bidder or offeror of its decision" (emphasis added). Similarly, when paragraph (e) refers to "SBA's determination" it means SBA as a whole.

contracting officer to make an inchoate award which would necessarily be subject to disavowal should the SBA thereafter decide against the contractor's eligibility. The "presumption" would then have a minimal or zero effect. It certainly would not, and would not be supposed to, influence the SBA's later ruling. The "successful" awardee would hardly wish to commence preparation for performance knowing that its "contract" was in just as much jeopardy as was its bid before the award. We cannot see that the Government would gain anything substantial from the making of the award in these circumstances. On the other hand, it is clear that, if the award can be made finally without waiting for the SBA, preparatory and actual work toward performance can start at once and delay will be materially reduced.

The defendant's rejoinder is that this interpretation would turn a reconsideration by the Size Standards Division Director, or an appeal to the Size Appeals Board, into an academic pursuit. It is true that further SBA proceedings, once the contracting officer makes an award pursuant to authority granted by this provision of the regulations, would have no effect on that particular contract. But the size determination can influence further contracts with the concern whose status is questioned. The value of having a final size determination on the books is apparent; a firm's business may be such that it often bids for Government projects. The later (1965) version of the Federal Procurement Regulations, quoted in note 4 supra, expressly provides for this use in case an appeal is untimely: "If an award was made prior to the time the contracting officer receives notice of the appeal, the contract shall be presumed to be valid and any determination rendered shall be considered in future procurements." 41 C.F.R. § 1–703–2(d) (1967). This 1965 provision is significant, too, because it shows that the drafters of this closely related portion of the FPR used "presumed" in the sense of "deemed"—a "conclusive", not a "rebuttable", "presumption".

We recognize, of course, that this reading of paragraph 1.703–2(e) creates some strain with the major policy of the Small Business Act, 15 U.S.C. § 631(a) (1964), in that an award of a small business set-aside to an unqualified concern will deprive an eligible small businessman of a Government contract. But those who administer the Act have plainly decided that the Congressional policy favoring small business was not expected to be enforced to the exclusion of all other interests. Witness the regulations accepting self-certification where no protest, a late protest, or a late appeal is filed, and the portion of paragraph (e) allowing an award—where "unusual conditions make it necessary that an award be made"—within the initial 10-day span allotted to SBA. Congress must be taken to have anticipated that general procurement interests would be given their place. In this instance, the serious risk of after-award cancellations resulting from the Government's interpretation of the regulation not only would be detrimental to contractors, see John Reiner & Co. v. United States, supra, 325 F.2d at 440, 163 Ct.Cl. at 386–387, but would work to the disadvantage of the Government's procurement activities. Contracting officers must sometimes act with great dispatch in order to protect the public, as well as the specifically Government, concern. Cf. 9 C.C.F. § 72697 (1964) (No. B–154428). We believe that paragraph (e), like the regulation in Otis Steel Prods. Corp. v. United States, supra, 316 F.2d 937, 161 Ct.Cl. 694, is an explicit and permissible recognition by the executive of a situation in which the need for speed and certainty outbalances the single-minded enforcement of the policy of the Small Business Act to the limits of its own logic.[11]

---

11. The policy of the Act is not wholly neglected since a prompt negative determination by the SBA would foreclose an award to the bidder. In comparison, the late-protest and no-protest situations, in which the bidder's self-certification is accepted,

Even so, the defendant says that plaintiff's case does not fall within paragraph (e). On July 14, 1964, the same day on which he made the award, the contracting officer wrote to Yutan that "any further delay in procurement action on * * * [the invitation for bids] would be disadvantageous to the Government. Accordingly, award was made this date to Mid-West Construction, Ltd." [12] This written declaration tracks the wording of paragraph (e) and expressly makes the only determination required of the contracting officer by that provision.[13] There is some question whether the award was made prior to receipt of Yutan's appeal, but we think that, even on summary judgment, the record is clear enough to say definitively that the award came first.[14] In any event, paragraph (e) does not limit the contracting officer's power to instances in which the award is made before an appeal is noted; the restriction is that he normally wait ten days from the first submission to SBA, and here he waited that long.

Although first agreeing (in its opening brief) to assume for the purposes of its summary judgment motion that the award action was taken pursuant to paragraph (e), the Government later submitted an affidavit (dated January 30, 1967) by the contracting officer showing, it is claimed, that he did not intend to exercise any authority under paragraph (e) and never made the requisite determination that delay would be harmful.[15]

envision only industry policing. See 41 Comp.Gen. 47, 53–54 (1961) (No. B–144621).

12. The full text of the letter is as follows:

"We have your telegram of this date announcing your intention to appeal the Small Business Administration determination that Mid-West Construction Company, Ltd. has small business status.

"Any further delay in procurement action on IFB No. 1–64–18 would be disadvantageous to the Government. Accordingly, award was made this date to Mid-West Construction, Ltd."

13. Paragraph (e) does not make it mandatory for the contracting officer to ascertain when SBA's determination can be expected, in the sense that his finding of disadvantage would be automatically invalidated by a failure to try to discover when the final SBA determination would be forthcoming. The sentence in paragraph (e) referring to such an inquiry merely directs the officer's attention to the main factor bearing on the probable length of the delay. If in fact there will be substantial delay which will be injurious, a finding to that effect is valid even though no attempt is made to ascertain accurately the length of the delay.

14. The letter to Yutan (note 12 supra) seems to indicate that the award was made before receipt of the appeal on July 14th. In addition, the award notice bears a time-stamp of 10:00 a.m. as the time of sending, and Yutan's telegram of appeal carries stamps of 2:19 p.m. (copy to the contracting officer) and 5:45 p.m. (copy to the SBA) as the times of receipt. An affidavit by the contracting officer now says that "the stamps do not *necessarily* convey an accurate portrayal of the time when I received knowledge of the events portrayed" and that "it was not *unusual* for me to obtain preliminary notification by telephone before a confirming telegram or letter was dispatched" (emphasis added), but he never says, even tentatively, that in this instance the award was made after he knew of the appeal or after the appeal was taken. The specific proof supplied by the letter of July 14th and by the time-stamps is not weakened enough, so as to call for a trial, by the mere general allegations that the stamps do not "necessarily" show the accurate times and that it was not "unusual" to receive telephone word in advance of the written document. The defendant does not ask for a trial of the issue.

15. The relevant portion of the affidavit is:

"6. That, at this date, I cannot recall the exact time between 10:10 A.M. July 13, and 10:00 A.M. July 14, I obtained knowledge S.B.A. had determined Mid-West Construction, Ltd. to be small business. I do recall that immediately after being informed by S.B.A. of Mid-West small business status, I met with representatives of the Division of Engineering for the purpose of deciding on which proposal to accept. After the decision was made to accept Mid-West's Proposal 2–C, I met with the Regional Budget Officer to obtain documented assurance sufficient

We by-pass the point of whether such a *post litem motam* declaration has any place in a litigation of this kind, because we believe that the affidavit does not require us to reject or disagree with the defendant's initial concession *arguendo*. So long as the contracting officer makes the determination required by paragraph (e), it is irrelevant whether he personally knew of the existence of that provision or thought he was acting under it or realized that his finding would result in a binding award despite SBA's subsequent adverse determination. If the proper finding of injury is made, the regulation applies of its own force. The important thing is the action he took, not whether he cited the section or realized it was on the books. On July 14, 1964, this contracting officer—as his letter to Yutan expressly says—decided that "any further delay in procurement action on * * * [the invitation for bids] would be disadvantageous to the Government," and "accordingly" (i. e., for that reason) he had made an award to Mid-West. If he had been fully aware of paragraph (e) and intended to act under it, he would not have done more.

The affidavit, it must be noted, does not attempt to disavow this specific finding of disadvantage; on the contrary it says that "delay in the procurement was a factor which was present." What the affidavit says is that (i) the contracting officer thought that the SBA had finally determined that plaintiff was qualified, and (ii) he did not make any determination "that Mid-West should obtain the contract whether or not it was a qualified small business." Even if we were to accept these statements at face value,[16] they would have no effect. Under paragraph (e), where the contracting officer decides that "any further delay in procurement action * * * would be disadvantageous to the Government" and therefore makes the award, it does not make any difference that he failed to recognize at that time that the protestant could take further steps. Regardless of the state of SBA consideration (once the initial 10-day period had passed), the paragraph gives the procurement officer power to act promptly if further delay would be injurious— and that is precisely what he found here. Similarly, it is unimportant that he did not decide that plaintiff should obtain the contract whether or not it was qualified. That was not a determination paragraph (e) called upon him to make. The regu-

---

funds were available and reserved for Proposal 2–C. I then sent Mid-West a telegram of acceptance at 10:00 A.M. on July 14.

"7. I can definitely recall, however, that I transmitted the award notice expressly upon my belief that it had been finally determined by S.B.A. that Mid-West Construction, Ltd. was a small business qualified to receive the award. That is, while delay in the procurement was a factor which was present (in that operating personnel desired a road to be constructed) I can definitely affirm that the award notice was transmitted only upon my belief that S.B.A. had ruled, finally, that Mid-West Construction, Ltd. was a qualified small business. I did not transmit the award notice upon any determination that Mid-West should obtain the contract whether or not it was a qualified small business, and, to my knowledge, no such determination exists."

**16.** If the contracting officer was correct in January 1967 in saying that on July 14, 1964, he felt that SBA consideration was already ended, it is very hard to see how he could have signed a letter on that same day, July 14, 1964, expressly acknowledging Yutan's "telegram of this date announcing your intention to appeal the Small Business Administration determination that Mid-West Construction Company, Ltd., has small business status * * *," and yet not have notified Mid-West that the award made a few hours before was made on the erroneous assumption that a final SBA decision had been rendered. Cf. Fox Valley Eng'r Inc. v. United States, 151 Ct.Cl. 228, 236 (1960), in which the court rejected the Government's contentions of plaintiff's inadequate performance, in part, because "they are * * * inconsistent * * * with the contemporaneous formal communications over the signature of the contracting officer * * *" that the work was acceptable.

lation made that decision for itself, once the contracting officer decided that greater delay would be disadvantageous. It was only necessary for him to appraise the impact of further postponement of the award, nothing more.

 The question remains whether we should now delve into the contracting officer's finding that delay would be harmful. In Coastal Cargo Co. v. United States, 351 F.2d 1004, 1007 173 Ct.Cl. 259, 263 (1965), we assumed "that, under appropriate circumstances, a court could overturn the decision of the contracting officer that an award must be made without delay." But the defendant does not ask that we send that issue to trial and on the present record there is no reason to reverse this contracting officer's determination. His affidavit says that "operating personnel desired a road to be constructed" and "delay in the procurement was a factor which was present." Moreover, Alaska's short construction season was drawing to a close. The fact that after the cancellation of plaintiff's contract it was decided not to build the road is obviously irrelevant to the circumstances existing on July 14, 1964; and the fact that the notice to proceed was not expected to issue until September 1st would not detract from the contractor's need for time to prepare from July 14th to September 1st. Under the standard of John Reiner & Co. v. United States, supra, 325 F.2d at 440, 163 Ct.Cl. at 386–387, the contracting officer's factual determination must be accepted as reasonable. See also Coastal Cargo Co., Inc. v. United States, supra, 351 F.2d at 1007, 173 Ct.Cl. at 263.

On these grounds we decline to uphold the post-award cancellation of the contract, and reject the defendant's request that we dismiss the petition as failing to state a claim. The award to Mid-West was proper and the company had a valid contract which it was not permitted to perform.

However, the plaintiff's cross-motion for summary judgment on liability must also be rejected. To recover Mid-West must prove that it was ready, able, and willing to perform. United States v. Penn Foundry & Mfg. Co., 337 U.S. 198, 69 S.Ct. 1009, 93 L.Ed. 1308 (1949); National Movers Co. v. United States, 386 F.2d 999, 181 Ct.Cl. —— (Nov. 1967). The defendant raises enough doubts to require a trial of that issue.

Defendant's motion for summary judgment and plaintiff's motion for partial summary judgment are both denied and the case is remanded to the commissioner for further proceedings.

COLLINS, Judge, took no part in the decision of this case.