ALLEN M. CAMPBELL COMPANY,
General Contractors, Inc.,

v.

The UNITED STATES.

No. 397–70.

United States Court of Claims.
Oct. 13, 1972.

Luther P. House, Atlanta, Ga., attorney of record, for plaintiff; Smith, Currie & Hancock, Atlanta, Ga., of counsel.

James F. Merow, Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, LARAMORE, Senior Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA and KUNZIG, Judges.

Plaintiff's Motion and Defendant's Cross-Motion for Summary Judgment

COWEN, Chief Judge:

In Mid-West Construction, Ltd. v. United States, 387 F.2d 957, 181 Ct. Cl. 774 (1967), this court held that the Government cannot rescind a validly awarded contract, advertised as a total small business set-aside, where the successful bidder is subsequently declared to be not a small business. Although the facts in this case are somewhat different, we think that the outcome should be the same. Accordingly, we grant plaintiff's motion for summary judgment, deny defendant's cross-motion, and remand the case to our trial commissioner for a determination of the amount of recovery.*

In March 1970, the United States Air Force issued an Invitation for Bids, on a "Small Business Restricted Advertising"

---

* In view of our disposition of this case, we need not pass on plaintiff's motion, filed February 29, 1972, to strike portions of an affidavit accompanying defendant's brief.

basis, for the construction of family housing at Eglin Air Force Base, Florida. The bids were opened on April 17, and the three lowest bidders were as follows:

| | |
|---|---|
| M. Dyson Building Co | $4,986,992 |
| Allen M. Campbell Co | 5,119,000 |
| Lloyd Wood Construction Co | 5,196,112 |

Several days after the bids were opened, both Wood and Chapman-Edwards Construction Co. (the fifth-low bidder) filed protests with the Small Business Administration in which they asserted that Dyson and Campbell were not small businesses. The Southeastern Area Office of the S.B.A., and later the Size Appeals Board, upheld their protests as to Dyson, but rejected their argument that Campbell's average annual receipts exceeded the $7,500,000 ceiling set out in the S.B.A.'s definition of a small business. (See 13 C.F.R. § 121.3–8 (1970).)

Upon receiving the decisions of the Size Appeals Board, the contracting officer at Eglin Air Force Base prepared on June 15, 1970, a Notice of Award to Campbell, which later that day he forwarded for mailing to the Registered Mail Center at the base. On the same day, Wood filed suit in the United States District Court for the Northern District of Alabama, in which it sought an injunction against the award and a declaration reversing the S.B.A.'s determination that Campbell was an eligible small business. The contracting officer was not informed of Wood's suit until the following morning, by which time the Notice of Award had already been sent to Campbell.

Campbell received the Notice of Award on June 17, and on June 19 Campbell's representatives appeared at Eglin Air Force Base to sign the formal contract documents. The contracting officer refused to do so, however, since he had just been informed that Wood was seeking a temporary restraining order. Later that day, the District Court did issue an order restraining the Air Force from executing any contract with Campbell or authorizing Campbell to proceed with the work.

Campbell subsequently intervened in the suit as a party-defendant, and a hearing was held on August 4, 1970. On August 13, the District Court issued a memorandum opinion which overturned the S.B.A.'s determination that Campbell was an eligible small business. Lloyd Wood Constr. Co. v. Sandoval, 318 F.Supp. 1167 (D.C.1970). The court expressly stated, however, that it had no power to order the Air Force to award the contract to Wood, id. at 1171, and that it was also without power to issue an injunction against either the Air Force or the Small Business Administrator. Id. at 1172. Accordingly, the court dissolved its prior order restraining the Air Force from proceeding with Campbell.

Subsequently, on August 26, 1970, the contracting officer "rescinded" Campbell's Notice of Award on the basis that the District Court's determination that Campbell was not a small business rendered it ineligible for the award. Campbell protested the action and unsuccessfully sought to stay implementation of the District Court's decision pending further judicial proceedings. A request to the Comptroller General to direct the Air Force to delay the award pending appeal was also denied. Comp.Gen.Dec. B–170746 (Sept. 11, 1970) (unpublished). Meanwhile, the Air Force sought permission from the District Court to proceed with the procurement, and on September 9, the Air Force issued to Wood a Notice of Award and a simultaneous order to begin work on the contract.

On November 12, 1970, Campbell filed suit in this court seeking damages for breach of contract, including anticipated profits. On the joint motion of the parties, proceedings here were suspended pending a decision on Campbell's appeal of the District Court's decision. On July 9, 1971, the United States Court of Appeals for the Fifth Circuit reversed, holding that the District Court, in determining whether Campbell was a small

business, should not have substituted its own judgment for that of the Small Business Administration where that agency's decision was based upon its technical expertise. Allen M. Campbell Co. Gen. Contractors v. Lloyd Wood Constr. Co., 446 F.2d 261 (5th Cir. 1971). By this time, however, Wood had substantially completed the contract.

As previously indicated, we think that most of the issues raised in this case were decided against the Government in Mid-West Construction, Ltd. v. United States, *supra*. Like here, that case involved a contract set aside for small businesses, which was later cancelled when the successful bidder was declared to be not a small business. In rejecting the argument that such circumstances render the contract void (or voidable at the Government's option), we held that the sole inquiry is "whether the contracting officer was authorized, in the circumstances, to make the award to plaintiff even though the company was not truly a 'small business.' " *Id.* 387 F.2d at 959, 181 Ct.Cl. at 778. In *Mid-West,* we found that authority in the Federal Procurement Regulations, 41 C. F.R. 1.703–2(e) (1964), which permit an award to an apparently eligible bidder, even though resolution of its size status is pending before the S.B.A., where further delay in awarding the contract would be disadvantageous to the Government.

■ Plaintiff's position in this case is stronger than that of the plaintiff in *Mid-West.* The contracting officer here delayed the award of the contract until *after* the Small Business Administration had determined that Campbell was, and Dyson was not, eligible for the award. At that point, he had the requisite authority to award the contract to Campbell, since the regulations require only that he suspend procurement pending any protests to the S.B.A. *See* 32 C.F.R. § 1.703(b)(3)(iv) (1970). Indeed, he could no longer even question Campbell's eligibility (or Dyson's ineligibility) for the award, as the Small

Business Act requires him to accept, as "conclusive," all size determinations by the S.B.A. *See* 15 U.S.C. § 637(b)(6) (1970). Since the contracting officer possessed the necessary authority to award the contract to Campbell, we think it is clear that the notice of award created a binding contract.

Much of the discussion in the parties' briefs concerns whether the procurement here was "urgent." Plaintiff says it was, apparently in an attempt to fit this case precisely into the factual mold of *Mid-West.* The Government contends that this case is unlike *Mid-West* because the procurement was not urgent, at least not at the time of the original award to Campbell. Since there was no urgency, the contracting officer had no authority, the Government says, to waive the "small business limitation" in the invitation as did the contracting officer in *Mid-West.* In addition, the Government argues that the procurement became urgent after the District Court's decision. This contention is apparently made to justify the Government's determination not to delay the award pending the appeal of that decision but instead to proceed immediately with Wood.

■ We fail to see how "urgency" is relevant to this case. In *Mid-West,* the contracting officer's authority to make an award existed under the regulations only because he determined that the urgency of the procurement prevented his awaiting the outcome of a protest pending with the S.B.A.; here, the contracting officer's authority to award the contract to Campbell existed whether or not the procurement was urgent, because he delayed the award, in accordance with the regulations, until all protests were resolved. Moreover, we do not think that the Government can excuse itself from liability merely by saying that it could not delay the award to Wood while Campbell appealed the District Court's decision. The Government had already awarded the contract to Campbell, and under our holding in *Mid-West,* Camp-

bell's rights under that contract were established whether or not it was in fact a small business. As we read the District Court's decision, it did nothing more than declare that Campbell was not a small business. Such a declaration did not affect the validity of Campbell's contract.

We emphasize that this case does not involve a situation where a dissatisfied bidder has persuaded a court to direct the procuring agency either to award a contract to that bidder or to cancel an award made to another one. In those circumstances the result might be different, but we intimate no opinion on that question at this time.

■ Finally, we cannot accept plaintiff's arguments that it is entitled to common-law damages. Unlike the contracts in *Mid-West*, the contract here contained a standard Termination-for-Convenience-of-the-Government clause. In numerous cases since John Reiner & Co. v. United States, 325 F.2d 438, 163 Ct.Cl. 381 (1963), cert. denied, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964), we have held that this provision of the contract prevents the recovery of anticipated profits.

Plaintiff's motion for summary judgment as to liability is granted, and defendant's motion for summary judgment is denied. The case is remanded, pursuant to Rule 131(c), for a determination of the amount of recovery in accordance with the Termination for Convenience clause.

NICHOLS, Judge (concurring):

I join in the court's opinion, except where inconsistent with what follows, but would add the following: The ill advised intervention of the District Court in this case will cost the Government $77,112, the difference between Campbell's and Lloyd Wood's bids, plus whatever Campbell recovers under the termination clause measure of damages this court prescribes. That, in the circumstances, is simply a contract limitation of liability, as if a passenger carrier writes into your ticket that it will be liable up to only $1 a pound if it loses your baggage. A heavy loss probably will fall on Campbell which cannot be passed on to the United States and will not be measured. Lloyd Wood will keep whatever profit it earned from the contract it should not have been awarded, less taxes, and will have no obligation to make good the losses to Campbell and to the United States, whose infliction it has obtained. This result is not satisfying to the sense of justice, and it seems to me it ought to give courts some pause in their zeal to intermeddle in the award of Government contracts, that has stemmed from Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970). True, the District Court did not order an award to Lloyd Wood, or enjoin one to Campbell, measures it deemed outside its jurisdiction, but it said and did so much to bring about that outcome, it cannot now avoid responsibility for it. To "set aside", as it did, the determination of the SBA that Campbell was a small business, left no other option but paralysis.

Defendant would treat this intervention as *force majeure,* an Act of God or the public enemy, for which it is not responsible. I submit that a District judge who causes a breach of contract, acting within his jurisdiction albeit erroneously, is the United States, just as much as if the Secretary of Defense or the Comptroller General had done it.

I suggest that trial courts should make their interventions "circumspect and infrequent", in the Fifth Circuit's phrase. 446 F.2d, at 264. Circumspection would include requiring an unsuccessful bidder, when plaintiff, to post security guaranteeing to make good any loss to any party that judicial interference may cause, if it is not ultimately upheld. Courts that do not observe these precautions will sometimes leave wounds the Court of Claims will be in no position to heal. That is the purport of our decision here. In the instant case, one would have expected a bond in the District Court, or other security in

some amount, on some conditions, in view of F.R.Civ.P. § 65(c), but the court papers do not indicate that security was required until the unhappy Campbell Company had to file a bond on its appeal to the Fifth Circuit.

KUNZIG, Judge, joins in the foregoing opinion and concurring opinion.