**DELANEY CONSTRUCTION CORPORATION,**
Plaintiff,

**Tug Hill Construction, Inc.,**
**Plaintiff–Intervenor,**

v.

**The UNITED STATES, Defendant.**

No. 03–193 C.

United States Court of Federal Claims.

May 19, 2003.

Michael H. Payne, Ft. Washington, Pennsylvania, attorney of record for the plaintiff.

Shelly L. Ewald, McLean, Virginia, attorney of record for plaintiff-intervenor.

John C. Einstman, Department of Justice, Washington, D.C., with whom was Assistant Attorney General Robert D. McCallum, Jr., David M. Cohen, Director, Harold D. Lester, Jr., Assistant Director, for the defendant.

## *OPINION* [1]

MEROW, Senior Judge.

This post-award protest matter comes before the court on plaintiff's motion to enjoin corrective action the Corps of Engineers proposes to take in connection with the award to plaintiff of a contract to design and construct a new training access road at Fort Drum, New York. Intervenor, Tug Hill Construction, Inc. ("Tug Hill"), the contractor submitting the next lowest priced proposal for the road contract also seeks to enjoin aspects of the proposed corrective action. Defendant defends the proposed corrective action and contests plaintiff's standing.

### FACTS

On July 3, 2003, the Corps of Engineers issued a request for proposals ("RFP") for the design and construction of the Training Area Access Road, First Army Boulevard ("FUSA") at Fort Drum, New York—RFP No. DACA 51–02–R–0021. The RFP provided that the award would be made to the offeror submitting the lowest priced technically acceptable offer. Contractors submitting offers were "reminded to include their best technical and price terms in their initial offer and not to automatically assume that they will have an opportunity to participate

1. This Opinion incorporates portions of the unpublished order, filed February 20, 2003, denying defendant's motion to dismiss.

in discussions or be asked to submit a revised offer."

The RFP was not a small business set-aside in that it provided for full and open competition so that both large and small business contractors could submit proposals. The RFP did include Section 00600 "Representations & Certifications" which included FAR 52.219–1 "SMALL BUSINESS PROGRAM REPRESENTATIONS" requiring offerors to certify whether they were: a small business concern; a women-owned small business concern; a small disadvantaged business concern; a veteran-owned small business concern; a service-disabled veteran-owned small business concern; and/or a HUB–Zone small business concern.

A regulation, 48 C.F.R. § 19.1308(b),[2] provides that the contracting officer shall insert FAR clause 52.219–4, "Notice of Price Evaluation Preference for HUBZone Small Business Concerns" in a solicitation, such as the Fort Drum road RFP, conducted using full and open competition. However, by mistake this clause was not included in the RFP for the Fort Drum road contract. The RFP did advise offerors that the small business size standard for the road contract was $28.5 million in annual receipts.

By the receipt date of August 12, 2002, the Corps of Engineers obtained seven proposals for the road contract. Three offerors, including Tug Hill, self-certified as HUBZone small business contractors. Two contractors, including plaintiff, Delaney Construction Corp. ("Delaney"), self-certified as small businesses. The remaining offerors were large businesses under the size standard specified.

Upon evaluation by the Corps of Engineers all offerors were found to be within the competitive range. Discussions with offerors were held on August 28–29, 2002. The Corps requested final proposal revisions which were evaluated by September 23, 2002, and all seven were found to be technically acceptable. The lowest technically acceptable offer was submitted by Delaney in the amount of $10,830,000.00. Tug Hill's $11,286,000.00 of-fer, the second lowest technically acceptable, was within ten percent of Delaney's proposed price.

Information obtained by Tug Hill at its post-award briefing indicates that the Corps initially contemplated applying the ten percent HUBZone price preference, required by 15 U.S.C. § 657a, to Delaney's proposed price. If this were done, Tug Hill, a HUBZone small business with a proposed price within ten percent of Delaney's, would have received the contract award on the basis of its then lowest technically acceptable offer. However, Delaney's self-certification as a small business was noted, which precluded the addition of a HUBZone price evaluation preference to its price, as the preference is not applied to an offer from a small business. 15 U.S.C. § 657a(b)(3)(A). On September 23, 2002, the Corps awarded Contract No. DACA 51–02–C–0030, for the design and construction of the Fort Drum training access road to Delaney. By error, the names of the offerors for this contract and their proposed prices were then posted on the Corps' website, but this information was subsequently removed. The names and proposed prices submitted by the three lowest bidders, Delaney, Tug Hill, and Lancaster Development, Inc., were, however, subsequently published in the Dodge Report.

On September 24, 2002, the Corps notified Tug Hill that the contract had been awarded to Delaney. By a letter dated September 30, 2002, Tug Hill initiated a size protest, pursuant to FAR 19.302(d), asserting that Delaney was not a small business. Tug Hill's letter stated, in part:

\* \* \* \* \* \*

Tug Hill protests any award to Delaney on the basis that Delaney does not appear to be a small business under the appropriate SIC classification for this procurement. In this regard, it is believed that Delaney has gross annual revenues in excess of $28.5 million. As Delaney is a large business, rather than a small business contractor, the HubZone Price Evaluation Prefer-

---

**2.** For convenience, regulations will be cited here-after by their "FAR" designation, e.g. FAR 19.1308(b).

ence should have been applied to add 10 percent to Delaney's price, therefore displacing them as the low bidder in accordance with 15 U.S.C. § 657a(b)(3)(A).

On September 30, 2002, Delaney, by letter, notified the contracting officer that it had not considered revenues from several affiliated companies when it self-certified as a small business in its proposal for the Fort Drum contract. Delaney noted that its subsequent research indicated that "the Small Business Administration may include 'Affiliate Revenue' in their calculation."

On October 11, 2002, Delaney's counsel wrote to the Small Business Administration stating, in part:

\* \* \* \* \* \*

Our client provided the attached letter to the Contracting Officer on September 30, 2002, and provided the pertinent information regarding its affiliated companies. Accordingly, our client has authorized us to advise you that it no longer contends that it is a small business concern. Although our client recognizes that this will affect its participation in small business set-aside procurements in the future, it will not affect the instant procurement given the fact that the solicitation was not a small business set-aside.

On October 16, 2002, the Small Business Administration forwarded to Delaney its formal size determination that Delaney Construction Corp. is "other than a small business for this procurement and all future procurements with a size standard of $28.5 Million."

By letter, dated October 17, 2002, Tug Hill submitted a post-award agency level protest requesting that the contract award to Delaney be rescinded and that the contract be awarded to Tug Hill. Counsel for Delaney responded to Tug Hill's protest by a letter, dated October 22, 2002 addressed to District Counsel for the Corps of Engineers. A copy was not provided to Tug Hill. Delaney asserted that Tug Hill's protest was based upon the HUBZone price evaluation preference. However, Delaney argued that the absence of the FAR 52.219–4 "notice" clause in the RFP precluded the application of a HUBZone price evaluation preference, and if Tug Hill was protesting the absence of the clause, its protest was untimely. On November 25, 2002, the District Counsel denied Tug Hill's protest on the asserted basis that absent the FAR 52.219–4 clause, a HUBZone price evaluation preference could not be applied and any protest concerning the absence of this clause had to be brought to the attention of the District before the date set for the receipt of proposals.

On December 9, 2002, Tug Hill submitted a protest to the General Accounting Office ("GAO") asserting that the HUBZone price evaluation preference required that the contract award to Delaney be rescinded and the contract awarded to Tug Hill. On December 19, 2002, the Division Counsel for the Corps of Engineers in a letter to the GAO responded to Tug Hill's protest as follows:

\* \* \* \* \* \*

The U.S. Army Corps of Engineers (Corps) requests that you dismiss Protest No. B–291755 filed by Tug Hill Construction, Inc., (Tug Hill), under Solicitation (RFP) No. DACA51–02–R–0021 since corrective action will be taken which renders the protest academic.

While the Corps does not concede that any of the allegations of the protest are valid, an amendment will be issued which among other items will add the HUBZone price preference clause to the RFP and the competition will be reopened. Further action may be taken later, if required.

By letter, dated December 23, 2002, to the General Accounting Office, counsel for Tug Hill objected to the corrective action proposed by the Corps of Engineers. In particular, Tug Hill objected to any reopening of competition in view of the previous public disclosure of the prices proposed by all offerors. The Agency Report submitted by the Corps to the GAO on January 21, 2003, defended its proposed corrective action and recommended that Tug Hill's protest be denied. A January 28, 2003 letter from the Corps of Engineers Division Counsel to the Small Business Administration stated as follows (in part):

\* \* \* \* \* \*

You have informed us that GAO referred subject protest to SBA for review. On December 19, 2002, the U.S. Army Corps of Engineers (Corps) informed GAO that it intended to take corrective action in this protest by issuing an amendment adding the omitted HUBZone preference clause and reopening the competition with the existing offerors. The protestor (Tug Hill) objected to the corrective action and demanded that GAO direct an award to it. The Corps still believes corrective action is appropriate in this case.

On January 28, 2003, plaintiff filed its complaint in this court seeking injunctive relief from the Corps' proposed corrective action. On January 29, 2003, defendant moved for dismissal of plaintiff's complaint pursuant to RCFC 12(b)(1). Tug Hill moved to intervene on January 31, 2003. Following briefing on defendant's dismissal motion, by unpublished order, filed February 20, 2003, the dismissal motion was denied and Tug Hill's motion to intervene was granted. Briefing on the complaints and requests for equitable relief filed by plaintiff and Tug Hill was completed and oral argument then held on April 17, 2003.

## ANALYSIS

■ Standing is a threshold jurisdictional issue. *Info. Tech. & Applications Corp. v. United States,* 316 F.3d 1312, 1319 (Fed.Cir. 2003). Accordingly plaintiff's standing to initiate this protest action after obtaining the contract award was resolved after briefing, by the unpublished order, filed February 20, 2003, which will not be repeated here. In essence, plaintiff is not asserting a contract claim addressed to the termination of the Fort Drum road contract. *See Davis/HRGM Joint Venture v. United States,* 50 Fed.Cl. 539, 545 (2001); *Griffy's Landscape Maint. LLC. v. United States,* 51 Fed.Cl. 667, 673 (2001). The corrective action proposed by the Corps of Engineers involves returning the status of this procurement to its preaward stage with the result that the subject matter of the protest concerns the offerors' objections to submitting new price proposals to obtain the road contract. As such the February 20, 2003 Order concludes that plaintiff is an "interested party" pursuant to

*American Fed'n of Gov't Employees, AFL–CIO v. United States,* 258 F.3d 1294, 1299 (Fed.Cir.2001), *cert. denied,* 534 U.S. 1113, 122 S.Ct. 920, 151 L.Ed.2d 885 (2002). With respect to the proposed corrective action, plaintiff is a prospective offeror whose direct economic interest would be affected by the new award of the contract which would occur on the basis of the corrective action at issue. *See IMS Servs., Inc. v. United States,* 32 Fed.Cl. 388 (1994). Plaintiff is not attempting to protest solely as a contract awardee. *See ABF Freight System, Inc. v. United States,* 55 Fed.Cl. 392 (2003).

As a result of the controversy over the HUBZone price evaluation preference, the corrective action proposed by Corps of Engineers consists of rescinding or terminating the contract award to plaintiff, adding the omitted FAR 52.219–4 HUBZone notice clause to the RFP, soliciting new price proposals, and again awarding the Fort Drum road contract.

■ Plaintiff protests this proposed corrective action on the assertion that the omission of the HUBZone notice clause in the RFP precluded the application of the price evaluation preference and resulted in a proper award on September 23, 2002. It appears that plaintiff is correct as to the legality of the award it received, but not for the reason argued.

In 1997, Congress passed the Historically Underutilized Business Zone ("HUBZone") Act, Pub.L. No. 105–135, §§ 601–607, 111 Stat. 2592, 2627–36 (codified at 15 U.S.C. § 657a (2000)); *see also J & H Reinforcing and Structural Erectors, Inc. v. United States,* 50 Fed.Cl. 570, 571 (2001). Pursuant to that legislation, the HUBZone program was established. The purpose of the HUBZone program "is to provide Federal contracting assistance for qualified small business concerns located in historically underutilized business zones, in an effort to increase employment opportunities, investment, and economic development in those areas." FAR 19.1301(b); *see also J & H Reinforcing,* 50 Fed.Cl. at 571. Once a firm is HUBZone certified and its name appears on the Small Business Administration's List of Qualified HUBZone Small Business Con-

cerns, the firm is eligible for HUBZone program preferences. FAR 19.1303(b); *see also J & H Reinforcing,* 50 Fed.Cl. at 571.

The HUBZone program provides three mutually exclusive measures to assist HUBZone businesses obtain federal contracts: (1) HUBZone set-asides; (2) HUBZone sole source awards; and (3) HUBZone price evaluation preferences. *See* FAR 19.1305–07; *see also J & H Reinforcing,* 50 Fed.Cl. at 571. Under the HUBZone price preference procedure set forth for full and open competitions, the "contracting officer shall give offers from HUBZone small business concerns a price evaluation preference by adding a factor of 10 percent to all offers," except those enumerated which includes offers from "[o]therwise successful offers from small business concerns." FAR 19.1307(b)(2); *see also Metcalf Constr. Co. Inc. v. United States,* 53 Fed.Cl. 617, 644–45 (2002). The regulations further provide that "[t]he contracting officer shall insert the clause at [FAR] 52.219–4 ... in solicitations and acquisitions conducted using full and open competition." FAR 19.1308(b). The language set forth at FAR 52.219–4 provides, in relevant part:

(b) *Evaluation preference.* (1) Offers will be evaluated by adding a factor of 10 percent to the price of all offers, except—
(i) Offers from HUBZone small business concerns that have not waived the evaluation preference;
(ii) Otherwise successful offers from small business concerns;

\*   \*   \*   \*   \*   \*

The price evaluation provision of the HUBZone Act, 15 U.S.C. § 657a(b)(3)(A), similar to Competition in Contracting Act provisions, 10 U.S.C. § 2305(a)(1)(A)(i), applies directly to all applicable contracts. It is not necessary to add or "read into" a contract, any clause, such as the FAR 52.219–4 notice clause, to cause a solicitation to become subject to this statutory provision. The application of the Act is not conditioned on the presence of a contract clause. Plaintiff argues that the FAR 52.219–4 clause is needed as it includes a place where a HUBZone small business can signify its waiver of the price evaluation provision

should it wish to compete only as a small business and avoid HUBZone performance obligations with respect to use of subcontractors. However, the FAR 52.219–4 clause mainly provides notice as to the provisions of 15 U.S.C. § 657a which are, in any event, applicable to a full and open competition procurement. Checking a block on a form is not the only way to indicate a waiver of the price evaluation preference. This can be otherwise accomplished by including a waiver as a part of an offeror's proposal. In the instant case, Tug Hill's proposal set forth a subcontracting plan which greatly exceeded HUBZone requirements so that any "waiver" issue is simply not relevant with respect to determining whether a prejudicial procurement error occurred in the omission of the FAR 52.219–4 notice clause in the RFP for the Fort Drum road contract.

It is concluded that no prejudicial error occurred by reason of the omission of the FAR 52.219–4 notice clause from the RFP. The RFP required offerors to list their small business or HUBZone small business status. Delaney and Tug Hill did so, indicating clear knowledge as to the existence of small business and HUBZone provisions. Whatever the merit of the several decisions by the Comptroller General, cited by the parties, that missing provisions cannot be read into a solicitation, these decisions lack substance where, as here, the HUBZone statute itself mandates the price evaluation preference. However, this mandate does not apply to small business offers and Delaney self-certified as a small business. The Corps was entitled to rely on this certification for award purposes, and the post-award protest and small business size determination that Delaney's certification was erroneous does not impact the legality of the prior award. FAR 19.302(j); *see Mid–West Construction, Ltd. v. United States,* 181 Ct.Cl. 774, 387 F.2d 957 (1967)

■ The fact remains that the Fort Drum road contract was awarded without HUBZone price evaluation on the basis of a faulty small business certification. In this circumstance, contract termination action by the Corps, at this early stage after award, in

connection with proceeding to a new award on the same RFP would not engender a basis for relief pursuant to the standards set forth in section 706 of Title 5 [Administrative Procedure Act]. 28 U.S.C. § 1491(b)(4). This action by the Corps would have a rational basis. *See Landmark Constr. Corp.*, B-281957.3, 99–2 CPD ¶ 75, 1999 WL 976446 (Oct. 22, 1999); *Diagnostic Imaging Technical Education Center, Inc.*, B-257590, 94–2 CPD ¶ 148, 1994 WL 588043 (Oct. 21, 1994).

On the other hand, after termination action amending the RFP simply to include the FAR 52.219–4 notice clause and then seeking new price proposals does present a situation calling for equitable relief. As noted, HUBZone price evaluation was mandated for this contract award by 15 U.S.C. § 657a(b)(3)(A). No contract clause was required to subject this award process to the mandated price evaluation. While the FAR 52.219–4 notice clause was omitted from the RFP, the record contains no evidence that the presence of this clause would have any additional impact on price competition. This is clearly evident from the illogical argument of defendant and plaintiff that the FAR 52.219–4 clause is needed to provide a place for a HUBZone small business to indicate that it waives the statutory price evaluation preference should it wish to do so. Besides the fact that waiver can otherwise be included in an offeror's proposal, each offerors' proposal cannot be disclosed to other offerors during the award process. Thus no offeror can know whether the HUBZone price evaluation will be applicable or whether it has been waived by one or more HUBZone small business offerors. Only the government has this information as contained in each proposal. Price competition could not be affected by the presence or omission of the FAR 52.219–4 clause.

Furthermore, the prices proposed by all offerors for the Fort Drum contract have been mistakenly disclosed by the Corps. Based on this disclosure and where no useful purpose would be served by amending the RFP to add the omitted FAR 52.219–4 notice clause and then obtain new price proposals, it is concluded that these portions of the proposed corrective procedure would comprise arbitrary action. *See MCII Generator & Electric, Inc. v. United States,* No. 02–85 C, 2002 U.S. Claims LEXIS 172 (Mar. 18, 2002).

Both Tug Hill and Delaney oppose the solicitation of new price proposals and assert that irreparable injury to the competitive process would result. No public interest purpose has been established which would support trashing the disclosed proposed prices, obtained on the basis of full and open competition, in favor of obtaining new prices as a result of adding a contract clause which only provides notice of a statutory requirement that existed at all relevant time periods.

Accordingly, it is **ORDERED** that:

(1) Plaintiff's and Tug Hill's summary judgment motions shall be **GRANTED** to the extent that should the Corps of Engineers terminate plaintiff's right to perform Contract No. DACA 51–02–C–0030, any new award decision for this contract shall be made on the proposals previously received, with the small business certification correction provided by the Small Business Administration size determination with respect to Delaney and with the HUBZone price evaluation mandated by 15 U.S.C. § 657a(b)(3)(A) applied, so that defendant is enjoined from soliciting new price proposals for this contract award;

(2) Except as granted in (1) plaintiff's and Tug Hill's summary judgment motions shall be, otherwise, **DENIED;**

(3) Defendant's summary judgment motion shall be **GRANTED,** consistent with the relief denied in (2), and shall, otherwise, be **DENIED;**

(4) **NO COSTS** shall be assessed.