716 F.2d 1202
 31 Cont.Cas.Fed. (CCH) 71,506
 FOLEY CONSTRUCTION COMPANY, an Iowa Corporation, Appellant,
v.
U.S. ARMY CORPS OF ENGINEERS, an Agency of the United States
of America; The United States of America; Col. Joseph F.
Manzi, Jr.; Herbison Construction Company, a Minnesota
Corporation; and Herbison Bridge Company, a Minnesota
Corporation, Appellees.
 No. 82-2202.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 20, 1983.
Decided Sept. 14, 1983.
 
 Pillers, Pillers & Pillers, P.C. by George W. Pillers, Jr., Clinton, Iowa, Thomas D. McMillen, Jr., Des Moines, Iowa, for appellant.
 J. Paul McGrath, Asst. Atty. Gen., Richard C. Turner, U.S. Atty., William Kanter, Richard A. Olderman, Attys., Appellate Staff, Civ. Divisions, Dept. of Justice, Washington, D.C., Ronald H. Rothert, Asst. Dist. Counsel, Rock Island Dist. Corps of Engineers, Rock Island, Ill., Robert C. Dopf, Asst. U.S. Atty., Des Moines, Iowa, for the federal appellees.
 Before LAY, Chief Judge, and HEANEY and FAGG, Circuit Judges.
 FAGG, Circuit Judge.
 Foley Construction Company, the prevailing party in an action brought against the United States Army Corps of Engineers, seeks an award of attorneys' fees and expenses pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. Sec. 2412. The district court denied attorneys' fees because it held that the government's position was "substantially justified." We affirm.I. BACKGROUND
 This litigation stems from the award of a construction contract in which Foley was an unsuccessful bidder. The Corps issued an invitation for bids on a flood protection levee to be built along the Mississippi River in Burlington, Iowa. The invitation was limited to small businesses pursuant to the Small Business Administration set-aside program, which promotes the award of federal contracts to small business concerns. Herbison Construction Company submitted the lowest bid. The second lowest bid was submitted by Foley.
 Foley delivered in writing a timely protest to the Corps that Herbison did not qualify as a small business. The Corps suspended action on the contract and forwarded the protest to the SBA district office which ruled that Herbison was a small business. After the district office ruled, the Corps awarded the contract to Herbison. Foley then notified the Corps that it intended to appeal the decision of the SBA district office to the SBA Size Appeals Board and it brought an action in federal district court seeking to enjoin the Corps from proceeding under the contract with Herbison. The district court issued a temporary restraining order, and later a preliminary injunction, enjoining the Corps from proceeding under the construction contract until the Size Appeals Board had ruled on Foley's appeal. The Size Appeals Board ruled that Herbison was not a small business, reversing the decision of its district office. The district court then permanently enjoined the Corps from proceeding with the contract with Herbison and ordered the Corps to award the contract to Foley. Thirty days after judgment had been entered, Foley filed an application for legal fees and expenses of $27,444.23 pursuant to the EAJA. The district court denied the application for attorneys' fees because it held that although Foley was the "prevailing party," the government's position was substantially justified.
 II. EQUAL ACCESS TO JUSTICE ACT
 
 
 1
 The Equal Access to Justice Act, 28 U.S.C. Sec. 2412, enacted by Congress in 1980, provides for attorneys' fees in suits by or against the United States under certain limited circumstances. The purpose of the EAJA is to diminish the deterrent effect of the expense involved in seeking review of, or defending against, unreasonable government action. H.R.Rep. No. 1418, 96th Cong., 2d Sess. 5-6 (1980), U.S.Code Cong. & Admin.News 1980, p. 4953. In this case, Foley claims attorneys' fees under 28 U.S.C. Sec. 2412(d)(1)(A):
 
 
 2
 [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified * * *.
 
 
 3
 There is no question that Foley was the "prevailing party" in this litigation. The only dispute in this appeal is whether the position of the United States was substantially justified. The legislative history is helpful in interpreting the substantially justified standard. The House committee report on the EAJA states:
 
 
 4
 The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its case had a reasonable basis both in law and in fact, no award will be made....
 
 
 5
 The standard, however, should not be read to raise a presumption that the government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing.
 
 
 6
 H.R.Rep. No. 1418, supra, at 10-11, U.S.Code Cong. & Admin.News 1980, pp. 4989-4990. Although the committee report is strong evidence that a reasonableness standard should be applied, we must also consider that the Senate Judiciary Committee rejected an amendment to the EAJA that would have changed the language of the bill from "substantially justified" to "reasonably justified." S.Rep. No. 253, 96th Cong., 1st Sess. 8 (1979).
 
 
 7
 The courts of appeals have generally been in agreement that substantial justification is essentially a test of reasonableness. Dougherty v. Lehman, 711 F.2d 555 (3d Cir.1983); Foster v. Tourtellotte, 704 F.2d 1109, 1112 (9th Cir.1983); Broad Avenue Laundry and Tailoring, 693 F.2d 1387, 1391 (Fed.Cir.1982); Wyandotte Savings Bank v. NLRB, 682 F.2d 119, 120 (6th Cir.1982); S & H Riggers & Erectors, Inc. v. OSHRC, 672 F.2d 426, 430 (5th Cir.1982). The District of Columbia Circuit has stated that a standard based on the bounds of reasonableness is appropriate in most cases. For "borderline cases," however, it has developed more particularized criteria, including the clarity of the governing law, the foreseeable length and complexity of the litigation, and the consistency of the government's position. Spencer v. NLRB, 712 F.2d 539 at 557-561 (D.C.Cir.1983). This court appeared to adopt a reasonableness standard in United States for Heydt v. Citizens State Bank, 668 F.2d 444 (8th Cir.1982). In that case, a taxpayer had prevailed in reducing the scope of an IRS summons, but the district court's denial of attorneys' fees was affirmed because the district court found that the summons had been issued in good faith and for a proper purpose. Id. at 448.
 
 
 8
 In this case, the district court employed a reasonableness test, and that standard has not been challenged by either party on appeal. We now hold that the test of whether the position of the United States is substantially justified is essentially one of reasonableness in law and in fact. The government bears the burden of proving the substantial justification of its position. See H.R.Rep. No. 1418, supra, at 10-11. See also Dougherty v. Lehman, supra; Spencer v. NLRB, supra, at 557; S & H Riggers & Erectors, Inc. v. OSHRC, supra, 672 F.2d at 430; United States for Heydt v. Citizens State Bank, supra, 668 F.2d at 448.
 
 
 9
 The EAJA does not state which government position must be substantially justified. Several courts have examined the government's litigation position to determine its substantial justification. See, e.g., Spencer v. NLRB, supra, at 556; Tyler Business Services, Inc. v. NLRB, 695 F.2d 73, 75 (4th Cir.1982); Broad Avenue Laundry and Tailoring v. United States, supra, 693 F.2d at 1390-91. See also S & H Riggers & Erectors, Inc. v. OSHRC, supra, 672 F.2d at 430. The Third Circuit has concluded that the government position referred to is not the litigation position, but the agency action which made it necessary for a party to file suit. Natural Resources Defense Council v. U.S.E.P.A., 703 F.2d 700, 707 (3d Cir.1983). In most cases "it makes no functional difference how one conceives of the government's 'position' " because "the litigation position of the United States will almost always be that its underlying action was legally justifiable." Spencer v. NLRB, supra, at 551-552 (footnotes omitted).
 
 
 10
 The district court examined the government's position in litigation. The government has agreed with that assessment and Foley has not challenged the issue on appeal. Indeed, in its brief, Foley has framed the issue as follows: "Whether the United States Army Corps of Engineers was substantially justified in defending this action [emphasis added]." Foley concludes its brief by stating that "the Government's defense of [the] injunction action was not reasonable and cannot be substantially justified [emphasis added]." Given the way in which the parties have framed the issue on appeal, we will assume, for the purpose of this case, that "position of the United States" refers to the government's position in litigation.
 
 III. ANALYSIS
 
 11
 The issue that this court must decide is whether it was reasonable for the government to defend the Corps' actions in initially awarding the contract to Herbison and then proceeding with the contract after it received notice that Foley intended to appeal the decision of the SBA district office. The district court held that the Corps' "award and failure to suspend further contracting action were clearly illegal acts * * *." (Clear illegality is the standard imposed upon an unsuccessful bidder seeking judicial relief. See Sea-Land Service, Inc. v. Brown, 600 F.2d 429, 434 (3d Cir.1979).) This determination on the merits has not been appealed. The mere fact that the government lost its case, however, does not mean that its position was unreasonable and that attorneys fees and costs should be awarded to the prevailing party. The question is whether it was reasonable for the government to defend on the premise that its actions were not "clearly illegal."
 
 
 12
 At the outset, it is important to acknowledge the interest of the government and the public in a procurement process unfettered by delay. See Allis-Chalmers Corp., Hydro-Turbine Division v. Friedkin, 635 F.2d 248, 252-53 (3d Cir.1980); M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1303, 1306 (D.C.Cir.1971). In recognition of this interest, government agencies have generally been afforded broad discretion in making procurement decisions and in interpreting procurement regulations. Allis-Chalmers Corp., Hydro-Turbine Division v. Friedkin, supra, 635 F.2d at 252-53; Kinnett Dairies, Inc. v. Farrow, 580 F.2d 1260, 1270-72 (5th Cir.1978). In this case, to determine whether the Corps could award and proceed with the contract after the decision of the SBA district office, the parties turned to a complex maze of government procurement regulations. Some of the regulations appear to conflict; some are susceptible of more than one interpretation. With no clear guide for it to follow, we believe the government adopted a course consistent with its purposes and reasonably supported by the regulations.
 
 
 13
 The district court applied the Federal Procurement Regulations, 41 C.F.R. Sec. 1-1.000 et seq., which provide that upon receipt of a protest concerning small business status, procurement is to be suspended "pending SBA's determination of the status of the protested bidder," or until a ten-day period has expired. 41 C.F.R. Sec. 1-1.703-2(e). The district court interpreted the regulation to require that the contracting officer suspend procurement activity until the SBA had finally adjudicated the dispute. In this case, that meant that procurement was to be suspended until the Size Appeals Board had ruled. The government has argued reasonably, however, that the regulation requires suspension of procurement activity only until the SBA district office has ruled. Arguably, the regulations specifically contemplate a situation in which an award has been made following an initial SBA determination but prior to notice of appeal to the Size Appeals Board: "If an award has been made prior to the time the contracting officer receives notice of the appeal, the contract awarded shall be presumed to be valid and any determination rendered by SBA concerning the small business status of the concern involved shall be considered in future procurements." 41 C.F.R. Sec. 1-1.703-2(d). First, this regulation suggests that the contracting officer had authority to award the contract after the decision of the SBA district office was rendered. Second, this regulation establishes that once the contract was awarded, it was reasonable for the government to proceed with the contract since the regulation states that such a contract is "presumed to be valid." This has been interpreted to be a conclusive, not a rebuttable, presumption. Mid-West Construction, Ltd. v. United States, 181 Ct.Cl. 774, 387 F.2d 957, 963 (1967).
 
 
 14
 Foley chose to rely upon different language in the regulations, which contemplates that an award can be made pending SBA's determination, but only if "unusual conditions make it necessary that an award be made." 41 C.F.R. Sec. 1-1.703-2(e). Foley argued, and the district court agreed, that because the contracting officer had not made a determination that unusual circumstances were present which made further delay disadvantageous to the government, the Corps could not award or proceed with the contract until the final decision of the SBA had been reached. We are not required to determine which interpretation of the regulations was correct. It is enough for the purpose of this case to conclude that both Foley and the Corps interpreted disaccordant regulations in a reasonable manner.
 
 
 15
 Throughout this litigation the government has consistently contended that the appropriate regulations to be examined are the Armed Services Procurement Regulations, 32 C.F.R. Sec. 1-100 et seq. Although the district court found that these regulations were not applicable to this case, we believe it was reasonable for the government to contend that the regulations did apply. See 32 C.F.R. Sec. 1-102 (Armed Services Procurement Regulations specifically made applicable to Department of Defense); compare 41 C.F.R. Sec. 1-1.004 (Federal Procurement Regulations not made mandatory on Department of Defense). Moreover, these regulations clearly provide a reasonable basis for the government's position. 32 C.F.R. Sec. 1-703(b)(3) specifically states that an award made after the ruling of the SBA district office and before the contracting officer has received notice of an appeal is valid:
 
 
 16
 The SBA District Director will determine the small business status of the questioned bidder or offeror and notify the contracting officer and the bidder or offeror of his determination, and award may be made on the basis of that determination. This determination is final unless it is appealed in accordance with (4) below, and the contracting officer is notified of the appeal prior to award. If an award was made prior to the time the contracting officer received notice of the appeal, the contract shall be presumed to be valid [emphasis added].
 
 
 17
 Additionally, 32 C.F.R. Sec. 1-703(b)(3)(ii) provides that after the SBA district director has ruled on a bidder's small business status, contract procurement is further suspended only if an appeal is taken to the Size Appeals Board and if the contracting officer is notified of the appeal prior to the contract award. Given these regulations, the government's position in this case, in which the contracting officer was not notified of the appeal prior to the award, was reasonable.
 
 
 18
 Finally, it was reasonable for the Corps to conclude that even if its initial award to Herbison were later ruled improper, it could nevertheless proceed with the contract. Courts have held that the government cannot rescind a validly awarded small business set-aside contract where the successful bidder is later declared not to be a small business. Allen M. Campbell Co. v. United States, 199 Ct.Cl. 515, 467 F.2d 931, 931 (1972); Mid-West Construction Ltd. v. United States, supra, 387 F.2d at 963. Moreover, the Corps reasonably argued that Foley should not be awarded the contract because no particular party is entitled to the award of a contract. See Sea-Land Service, Inc. v. Brown, supra, 600 F.2d at 432; Cincinnati Electronics Corp. v. Kleppe, 509 F.2d 1080, 1089 (6th Cir.1975); Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859, 864 (D.C.Cir.1970). There was support for the Corps' position that even if Foley had been wronged, it had an adequate remedy at law. In Iconco v. Jensen Construction Co., 622 F.2d 1291 (8th Cir.1980), this court allowed an unsuccessful bidder on a small business set-aside contract let by the Corps to sue the successful bidder for unjust enrichment. Finally, an unsuccessful bidder can sue the United States for its bid preparation and proposal costs. See, e.g., Lincoln Services, Ltd. v. United States, 678 F.2d 157, 158 (Ct.Cl.1982); Cincinnati Electronics Corp. v. Kleppe, supra, 509 F.2d at 1089.
 
 
 19
 In sum, this is not the type of case to which the EAJA was intended to apply; there was no unreasonable government action involved. The government interpreted a group of facially conflicting regulations in a reasonable manner and the Corps' underlying interpretation of the regulations has been the framework for the government's defense in this litigation. "Whether the position the United States took in the litigation was substantially justified because it was reasonable depends upon all the pertinent facts of the case. Fixed rules cannot be established for determining this issue." Broad Avenue Laundry and Tailoring v. United States, supra, 693 F.2d at 1391. Considering all the pertinent facts in this case, we conclude that the government's position in litigation, although later ruled in correct, was substantially justified. Accordingly, the order of the district court denying fees and costs to Foley is affirmed.