Robert L. MOATS, Plaintiff,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff,

v.

Sidney ESTRIDGE; James F. O'Crowley, Jr.; Herbert Maslin, Third-Party Defendants.

No. 82–0455–CV–W–1.

United States District Court,
W.D. Missouri, W.D.

Jan. 5, 1984.

See also, 564 F.Supp. 1330.

Stanley P. Weiner, Grier, Swartzman & Weiner, Kansas City, Mo., for plaintiff.

Mark E. Nebergall, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Robert G. Ulrich, U.S. Atty., Kansas City, Mo., for defendant.

David Rhodus, Morris, Larson, King, Stamper & Bold, Kansas City, Mo., for third-party defendant, James F. O'Crowley, Jr.

John F. Michaels, Ryder, Rose & Frensley, Kansas City, Mo., Segal, Liling & Greenberg, New York City, for third-party defendant Herbert Maslin.

MEMORANDUM AND ORDER

JOHN W. OLIVER, Senior District Judge.

I

On May 26, 1983 this Court granted Moats' motion for summary judgment after determining that Moats was not a responsible person under 26 U.S.C. § 6672, but ordered that the clerk not enter the final judgment until directed to do so by further order of the Court. 564 F.Supp. 1330. That was done so the issue of attorney's fees could be decided and judgment on that issue coordinated with the entry of judgment on the motion for summary judgment.

This case now pends on plaintiff Moats' application for award of fees and expenses pursuant to Section 204(a) of the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A). In accordance with orders of this Court the parties have submitted responses which set forth accurate information regarding communications between the parties before this litigation was commenced and an explanation by the Government, supported by all relevant documentation, concerning the factors employed by the Government in its decision to take action to attempt to hold Moats liable for taxes as a person responsible to collect and account for employment taxes under 26 U.S.C. § 6672. We now have before us all of the information known by the Government when it made its decision to hold Moats responsible for the taxes as well as all information that came to its attention after the litigation was commenced up to the date summary judgment was entered.

## II.

A brief discussion of our May 26, 1983 Memorandum Opinion is useful here. Pursuant to Section 6672 the Internal Revenue Service assessed a 100 percent penalty against Moats in the amount of $29,903.91 to cover withholding taxes of Arlen Trophy Company (Arlen) for the calendar quarters ending on December 31, 1975 and March 31, 1976. Plaintiff paid a small portion of the Section 6672 assessment, claimed a refund, and after the refund claim was denied, brought an action in this Court. The Government counterclaimed for the full amount of the penalty. At all relevant times, Arlen, located in Middlesex, New Jersey, was a wholly owned subsidiary of Gateway Sporting Goods Company (Gateway), located in Kansas City, Missouri.

In August 1974 Moats was employed by Gateway as its controller. Arlen was experiencing financial difficulties and, in late 1974, Moats was assigned to assist Arlen in correcting Arlen's financial situation. In January 1975 Moats was asked to assume the position of acting controller for Arlen which he did for a period of eight weeks. During this eight-week period, Moats had the authority to pay bills for Arlen and he made certain that the payroll taxes were paid to the IRS.

In January 1976, Moats was promoted to the position of vice-president and treasurer of Gateway. Except to the extent that he could be considered such during the eight-week period of early 1975 during which he acted as controller for Arlen, Moats was never an officer, employee, director, or shareholder of Arlen. Moats' duties at Gateway which related to Arlen were limited to reviewing Arlen's financial conditions and cash needs and reporting those to his superiors at Gateway. Moats did, however, have authority to sign checks on Arlen's checking account but he could only do so for emergency purposes and could not have, in any event, signed a check for over $2,000.00 without a co-signer.

Based upon the undisputed facts established by the affidavits and depositions in the record, this Court determined that Moats was not a "responsible person" under Section 6672. The fact that Moats had check signing authority, visited the Arlen premises during the periods in question, and was first a controller and then vice-president and treasurer of Arlen's parent company did not in any way establish that Moats had the authority to pay the taxes.

Moats presented uncontradicted evidence that his check signing authority was limited and that the determination as to what bills would be paid, including tax bills, was controlled by others at Gateway and Arlen. Moreover, by January or February of 1976, Moats was directed to stay out of Arlen's business affairs after he repeatedly reminded his superiors that the payroll taxes were not being paid. In short, Moats was in no position to exercise authority to pay the taxes under Section 6672 as interpreted by the applicable case law.

## III.

The parties have submitted documents to this Court setting forth the events leading up to plaintiff filing suit including information obtained by the IRS and used by it in making its determination to hold plaintiff

personally responsible for the unpaid taxes pursuant to § 6672.

### A.

On December 13 and December 26, 1978, the District Director of the IRS sent Moats letters informing him that the IRS proposed to assess a penalty against him for Arlen's unpaid taxes. These letters did not set forth the reasons for the assessment but the December 26, 1978 letter stated that "[i]f you do not agree with the proposed assessment and wish to appeal your case, you may do so within 30 days from the date of this letter."

On January 5, 1979, Moats executed a power of attorney to his attorney of record in this case in order that the assessment could be protested through counsel. A protest was filed on January 26, 1979 which set forth Moats' legal authority in support of his position that he was not liable for Arlen's taxes, along with a sworn statement of facts. On February 7, 1979 the protest was supplemented by a sworn statement of Donald Farwell, Vice-President of Gateway.

In his statement of facts in support of his protest, Moats stated, among other things, that his duties at Arlen were limited to reviewing Arlen's financial condition and cash needs and advising others about such conditions; that he never had authority to determine which of Arlen's creditors would be paid, that authority being exercisable only by Ronald W. James, Vice President and General Manager of Arlen, and Sidney M. Estridge, Chairman of the Board and Chief Executive Officer of Gateway; and that Moats periodically informed James, Estridge and James F. O'Crowley, Gateway's president, that Arlen's taxes had not been paid.

Farwell's statement supported the facts as presented by Moats. He stated that, in his position as vice-president, he was familiar with the responsibilities and authority of Moats and that Moats had no authority or discretion to determine which of Arlen's creditors would be paid by Arlen.

In November of 1979, after the written protest was submitted, Moats, his counsel, and Farwell met with Frank Schuler, appellate conferee of the IRS at which time an extensive oral presentation was made. This oral presentation, supplemented by additional written statements of Moats and Farwell, set forth in greater detail Moats' position that he was not a responsible person. A description of Moats' duties, the operation of Gateway and Arlen, and the persons who did have the authority to pay the taxes was presented to the IRS.

On April 8, 1980, the IRS wrote to Moats and informed him that his protest was unsuccessful and that the 100 percent penalty would therefore be assessed against him. This letter did not set forth any basis for the decision. Moats was never presented with any specific findings of fact on which the assessment was based and, in fact, was never given any reasons or justification at all.

In order to insure collection of the penalty, the IRS, in June of 1981, filed a federal tax lien against Moats' home, and in October of that year, filed a levy on Moats' wages. On November 9, 1981, the IRS sent notice to Robert Moats and his wife, Elizabeth Moats, that their tax overpayment reported on their 1980 joint federal income tax return had been applied to the penalty.

### B.

Although the IRS did not provide Moats with its reasons for assessing the penalty against him, it provided this Court with various memoranda and interview sheets which it used in making its determination. The IRS appeals officer prepared a supporting statement analyzing the facts and circumstances taken into account in arriving at the conclusion that Moats was a responsible person under Section 6672. In that memorandum the appeals officer discussed the statements of Moats and nine other individuals and came to the conclusion that Moats had the authority to pay the taxes. In reaching this conclusion, the appeals officer relied heavily on statements from officers and employees of Arlen.

For example, Mr. James, Vice-President at Arlen, stated to the IRS that Moats kept in daily contact with Arlen, required daily financial reports and would use the reports to make a recommendation as to what should be done with the cash funds of Arlen. The appeals officer conceded that "There is no evidence in James' statement that he knows that Moats was actually making the original decisions". Maslin, President of Arlen, stated that Ray Thomas, controller of Arlen, had the responsibility and authority to pay the taxes but that Thomas was under the supervision of Moats and O'Crowley.

Statements of the officers and employees of Gateway indicated that Moats had no authority to pay the taxes. O'Crowley, President of Gateway, placed responsibility on Estridge, James and Maslin and gave no indication that Moats had any such authority. He basically stated that Estridge made all of the decisions in regard to which of Arlen's creditors would be paid.

Farwell, Vice-President at Gateway, stated absolutely that Moats had no authority to pay the tax obligations and said that if Moats had paid the taxes without proper authorization, it would have likely caused Moats' dismissal from Gateway. Farwell's statement is the most detailed of all those statements relied on by the IRS. It specifically described Gateway's relationship with Arlen and the method employed by Gateway, and especially Chairman of the Board Estridge, in directing the management of Arlen and determining which of Arlen's bills should be paid and when. All of the other statements relied on by the IRS were interview forms in which the individual being questioned gave short replies to specific inquiries. The IRS also placed emphasis on the fact that Moats had check signing authority. The IRS knew, however, that at least six other persons were authorized to sign checks on behalf of Arlen.

The response of the Government also includes other memoranda prepared by the IRS based on the interview with the officers and employees of Arlen and Gateway. Those memoranda contain a similar analysis of the evidence and conclude that Moats was a responsible person under the provisions of Section 6672.

## IV.

The Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), provides for an award of fees to the prevailing party other than the United States, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." Plaintiff is without question a prevailing party under the EAJA having obtained a summary judgment against the United States in this action. Further, the Government does not contend that there are any special circumstances which would make an award unjust. The Government does, however, contend that its "position" in this case was "substantially justified".

The purpose of the EAJA is to diminish the deterrent effect of the expense involved in seeking review of, or defending against, unreasonable government action. H.R.Rep. No. 1418, 96th Cong.2d Session, 5–6 (1980), U.S.Code Cong. & Admin.News 1980, 4953, 4984 (House Report) "[T]he test of whether the position of the United States is substantially justified is essentially one of reasonableness in law and in fact." *Foley Const. Co. v. U.S. Army Corps of Engineers,* 716 F.2d 1202, 1204 (8th Cir.1983). Once a court has found that a party other than the United States has prevailed in the litigation, the Government bears the burden of proving the substantial justification of its position. The mere fact that the Government lost the case does not create a presumption against the reasonableness of the Government's position; it does, however, require the Government to come forward and demonstrate the reasonableness of its case. House Report, *supra,* at 10–11.

It is not clear from the language of the EAJA whether "position of the United States" refers only to the position of the United States taken in litigation before the courts or whether it includes the position taken by an agency of the United States which made it necessary for the party to

file the action. Several courts have concluded that the EAJA refers only to the litigation position. *Spencer v. NLRB*, 712 F.2d 539 (D.C.Cir.1983); *Tyler Business Services, Inc. v. NLRB*, 695 F.2d 73 (4th Cir.1982); *Broad Avenue Laundry and Tailoring v. United States*, 693 F.2d 1387 (Fed.Cir.1982). *See also S & H Riggers & Erectors, Inc. v. OSHRC*, 672 F.2d 426 (5th Cir.1982). The Third Circuit has concluded that the word "position" refers to the agency action which made it necessary for the party to file suit. *Natural Resources Defense Council v. U.S.E.P.A.*, 703 F.2d 700 (3rd Cir.1983)

Thus far, the Eighth Circuit has not found it necessary to decide the question. In *Foley Construction Company v. U.S. Army Corps of Engineers, supra*, at 1204, the Eighth Circuit assumed for purposes of that case that "position of the United States" refers to the Government's position in litigation because that was how the district court examined the Government's action and the way the parties framed the issue on appeal. The Court did recognize that in most cases "it makes no functional difference how one conceives the Government's 'position'" because "the litigation position of the United States will almost always be that its underlying action was legally justifiable". 716 F.2d at 1204 (quoting *Spencer v. NLRB, supra*, at 551–552 (D.C.Cir.1983)).

■ In the present case, we conclude that, in determining whether the Government's position was reasonable in law and in fact, it is necessary to examine both the Government's litigation position and the underlying facts which prompted plaintiff to file suit. *See Natural Resources Defense Council v. U.S.E.P.A., supra*, 703 F.2d at 715 (Thompson, J., concurring). The Government's litigation position was that its underlying action was legally justifiable, therefore, to determine the reasonableness of its position it is not enough to examine only the Government's position before this Court. Litigation does not exist in a vacuum; the litigation position of the Government cannot be insulated or extricated from the underlying factual and procedural background of the case especially where, as here, the litigation position is an adoption of the underlying agency action.

■ After examining the litigation position of the United States as well as the underlying factual data upon which that litigation position was based, we conclude that the Government's position was not substantially justified because it was not reasonable in law and in fact.

In determining whether Moats was a responsible person under Section 6672, the Government relied almost exclusively on the statements of individuals at Arlen. To these individuals it may have appeared that Moats had the authority to pay the taxes but this was mere speculation—they had no actual knowledge of Moats' authority. On the other hand, the statements of persons at Gateway who did have the knowledge of Moats' responsibility and authority indicate that Moats had no authority to pay Arlen's taxes on his own. The only detailed statements were supplied by Moats and Farwell and those statements specifically described the relationship between Gateway and Arlen and the responsibility and authority of the various individuals at Gateway and Arlen. Moreover, the IRS never presented Moats with specific findings and fact on which the proposed assessment was based. Moats was thus deprived of any opportunity to demonstrate that the position of the IRS was factually and legally untenable.

Once the litigation was commenced, the Government did not change its position. The Government had available to it all of the underlying facts gathered by the IRS and, in addition, it collected more information during the litigation in the form of affidavits and deposition testimony, but the Government continued to pursue its contention that Moats was a responsible person under Section 6672. It would serve no useful purpose to further review the facts as outlined in parts II and III of this memorandum; it is sufficient to state that the Government has not borne the burden of showing that its position in this case was substantially justified.

V.

Accordingly, it is

ORDERED that plaintiff's application for attorney's fees and other expenses pursuant to the Equal Access to Justice Act in the agreed amount of $10,600.00 should be and is hereby granted.