Launcie L. BRITTON, Plaintiff,

v.

UNITED STATES of America, Defendant and Third Party Plaintiff,

v.

Lenette JOHNSON and Robert L. Scroggins, Third Party Defendants.

No. 81–1048–CV–W–8.

United States District Court,
W.D. Missouri, W.D.

June 1, 1984.

Russell D. Jones, Joseph A. Colussi, Gage & Tucker, Kansas City, Mo., for plaintiff Britton.

Robert G. Ulrich, U.S. Atty., Michael P. Haney, Trial Atty., Tax Div., Kansas City, Mo., Dept. of Justice, Washington, D.C., for the U.S.

Lenette Johnson, pro se.

Robert L. Scroggins, pro se.

## MEMORANDUM AND ORDER

STEVENS, District Judge.

Plaintiff commenced this action for a refund of sums paid pursuant to a 100% penalty assessment under 26 U.S.C. § 6672. Defendant counterclaimed against plaintiff and brought a third-party action against Lenette Johnson and Robert L. Scroggins for the balance due on the assessment. The case was ultimately dismissed by stipulation, with plaintiff reserving the right to seek attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. This final issue is now ripe for consideration.

## I. FACTS

In addition to his full-time employment, plaintiff operates an independent bookkeeping and tax preparation service. Beginning in 1975, a corporation named Mr. Pro's Cleaners, Inc. (Mr. Pro's) retained plaintiff as its bookkeeper. At some point the Internal Revenue Service (IRS) learned that, during the three calendar quarters commencing July 1, 1978, and ending March 31, 1979, income and FICA taxes totalling $3799.18 had been withheld from the wages of Mr. Pro's employees but had not been paid to the government. After unsuccessful attempts to collect this amount from the corporation, the IRS in a letter dated May 1, 1980, proposed to assess a penalty in the full amount of the uncollected taxes against plaintiff as a person required to collect, account for, and pay over the uncollected taxes. It is unknown whether this letter was ever sent to plaintiff; however, it is undisputed that he never received it. A second letter to plaintiff dated June 2, 1980, stated that unless plaintiff responded within thirty days the proposed penalty would be assessed against him. Once again, this letter, if sent, was never received by plaintiff.

Plaintiff first learned of the assessment when he received a notice dated September 12, 1980, informing him that a federal tax lien in the amount of $3799.18 had been filed against his property. During the following weeks plaintiff had several conferences with revenue officer Lorita Thompson, who had processed the notice of assessment and lien. He told her he never received any notice until after the assessment and lien were accomplished. Plaintiff offered his records and explained that he was merely an independent bookkeeper and was not responsible for paying the corporation's taxes. In support of this assertion, plaintiff offered the revenue officer a notarized letter from Robert L. Scroggins, the president of Mr. Pro's, stating that plaintiff was not a corporate officer and was not responsible for paying the taxes of the corporation. Scroggins further stated he was responsible for the taxes. Ms. Thompson refused to investigate and directed plaintiff to make arrangements for installment payments on the assessment.

On October 15, 1980, plaintiff retained counsel. Under protest he paid a small

portion of the assessment and filed a claim for refund on November 3, 1980, which was amended on February 13, 1981. These claims restated plaintiff's contention that he was merely an independent bookkeeper. On February 24, 1981, revenue officer Thompson sent plaintiff a letter threatening enforcement action unless payment was forthcoming within ten days. Again under protest, plaintiff executed an installment agreement on March 9, 1981, providing for monthly payments of $100 beginning in April, 1981. The IRS again refused to investigate plaintiff's contention that he was merely an independent bookkeeper.

By letter dated March 13, 1981, counsel for plaintiff asked the head of the collection division of the IRS in Kansas City to suspend collection efforts pending the processing of the claim for refund or until such time as a refund action could be maintained in court. On the same day this request was refused (March 24, 1981), counsel sought review of plaintiff's case by the Special Procedures Staff of the IRS in St. Louis. Although the Special Procedures Staff indicated it would seek a recommendation from the collection division and advise counsel about the possibility of further discussion of the matter, plaintiff never heard from the Special Procedures Staff again.

On July 28, 1981, the IRS disallowed plaintiff's claim for refund as amended, and plaintiff commenced this action for refund on December 22, 1981. The government answered on February 23, 1982, and joined as third-party defendants Robert Scroggins, president of Mr. Pro's, and Lenette Johnson, secretary-treasurer of Mr. Pro's. Following discovery during the spring of 1982, the government indicated its willingness to settle the case in favor of plaintiff; however, not until fall of 1982 did settlement negotiations begin in earnest. Plaintiff indicated his intent to seek an award of attorney's fees under the EAJA, but the government resisted plaintiff's reservation of rights. After plaintiff's counsel sent letters informing defendant that its attempt to prejudice plaintiff's rights under the EAJA might have untoward con-

sequences, the government eventually agreed to settle the case except for the issue of attorney's fees. The Department of Justice formally accepted the terms of settlement on December 27, 1982, but the IRS did not issue a refund check to plaintiff until July 22, 1983. A stipulation of dismissal was filed five days later.

## II. DISCUSSION

Plaintiff seeks attorneys' fees under the EAJA both because the government's position lacked substantial justification and because the government acted in bad faith. Defendant denies both these allegations and questions whether plaintiff is a "prevailing party" as required for an award under the EAJA.

### A. Prevailing Party

As here pertinent, the EAJA provides:

[A] court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

The phrase "prevailing party" should not be limited to a victory only after entry of a final judgment following a full trial on the merits. A party may be deemed prevailing if he or she obtains a favorable settlement of the case, ... if the plaintiff has sought a voluntary dismissal of a groundless complaint, ... or even if he or she does not ultimately prevail on all issues ....

*United States ex rel. Heydt v. Citizens State Bank*, 668 F.2d 444, 447 (8th Cir. 1982) (citations omitted). *See also Environmental Defense Fund, Inc. v. Watt*, 722 F.2d 1081, 1085 (2nd Cir.1983) (discussing "expansive definition" of prevailing party).

Defendant apparently accepts the fact that a party may prevail by settlement, but defendant contends that plaintiff did not prevail under the facts here presented:

> The United States submits that the settlement speaks for itself. Plaintiff filed suit for a refund of $883.85 and in fact paid $1,883.85 pursuant to an assessment under 26 U.S.C. Section 6672. Yet, plaintiff amended his complaint and accepted a refund of only $51.10. The United States received full payment of the assessment from the plaintiff and two counterclaim defendants.

*Memorandum in Opposition to Plaintiff's Application of Launcie L. Britton for an Award of Attorneys' Fees and Expenses* at 5–6 (filed September 19, 1983) (footnote omitted). Defendant then proceeds to psychoanalyze the settlement, expounding at length on the alleged motives of the parties.

 Defendant's assertion that plaintiff is not a prevailing party obscures the truth and is nothing short of frivolous. The government smugly asserts that as a result of this action it received full payment of the assessment "from the plaintiff and two counterclaim defendants,"[1] which leaves the impression that plaintiff contributed to payment of the assessment. In fact, as the government well knows, plaintiff was reimbursed in full for the $1883.85 he paid on the assessment: Robert Scroggins paid him $1832.75, and the government refunded the remaining $51.10. Apparently, Robert Scroggins was reimbursing plaintiff as plaintiff made the installment payments. Plaintiff thereby became nothing more than an involuntary conduit since the IRS did not see fit to collect the assessment directly from the source. Thus, the government's assertion that by accepting a refund of $51.10 plaintiff in some way set-

tled for something less than full relief is, as plaintiff in reply aptly describes it, "the government's $51.10 red herring."[2] Simply because the government prevailed against Robert Scroggins does not in any way diminish the fact that plaintiff fully prevailed on his claim against the government.

### B. Position of the United States

Plaintiff is therefore entitled to recover attorneys' fees under the EAJA unless "the position of the United States was substantially justified."[3] 28 U.S.C. § 2412(d)(1)(A). Plaintiff contends that the "position of the United States" includes agency action which made it necessary to file suit. *Natural Resources Defense Council, Inc. v. Environmental Protection Agency*, 703 F.2d 700, 706–12 (3rd Cir.1983). On the other hand, defendant suggests that the position of the United States is limited to that taken in litigation. *See, e.g., Tyler Business Services, Inc. v. National Labor Relations Board*, 695 F.2d 73 (4th Cir.1982).

 As the citations of the parties suggest, the circuits are split on this question, and the Eighth Circuit has not squarely addressed it. *But see Foley Construction Co. v. United States Army Corps of Engineers*, 716 F.2d 1202, 1204 (8th Cir.1983) (assuming for purposes of that case "that 'position of the United States' refers to the government's position in litigation"). However, another division of this court in a case also arising under 26 U.S.C. § 6672 has recently held that the position of the United States includes agency action. *Moats v. United States*, 576 F.Supp. 1537 (W.D.Mo. 1984). Having reviewed the authorities on both sides of the issue, this court has concluded that for purposes of the EAJA "position of the United States" includes agen-

---

**1.** Even defendant's characterization of the parties is somewhat muddled; Johnson and Scroggins are properly described as third-party defendants rather than "counterclaim defendants."

**2.** Even assuming plaintiff had settled for something less than what he originally sought, he could still be a prevailing party. *See United*

*States ex rel. Heydt v. Citizens State Bank*, 668 F.2d at 447.

**3.** The EAJA also provides that fees need not be awarded where "special circumstances make an award unjust." The government has not relied on this exception, and the court finds no such special circumstances in this case.

cy action which made it necessary to file suit. Since the issue has been discussed at length elsewhere, the reasons for this decision need only be briefly summarized. First, as defined in the EAJA " 'United States' includes any agency and any official of the United States acting in his or her official capacity." 28 U.S.C. § 2412(d)(2)(C). Second, "[l]itigation does not exist in a vacuum; the litigation position of the Government cannot be insulated or extricated from the underlying factual and procedural background of the case especially where, as here, the litigation position is an adoption of the underlying agency action." *Moats*, 576 F.Supp. at 1541. Finally, the legislative history supports this interpretation of the EAJA. *Natural Resources Defense Council*, 703 F.2d at 707–12.

### C. Substantial Justification

■ It thus remains to be determined whether the government's position, as defined above, was substantially justified.

"The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its cause had a reasonable basis both in law and fact, no award will be made. In this regard, the strong deterrents to contesting Government action require that the burden of proof rest with the Government."

*United States ex rel. Heydt v. Citizens State Bank*, 668 F.2d at 447 (quoting legislative history). *See also Foley Construction*, 716 F.2d at 1204. Moreover, the government must make a "strong showing" that its position was substantially justified. *Natural Resources Defense Council*, 703 F.2d at 712 (quoting legislative history).

■ In taking action against plaintiff, the government relied on 26 U.S.C. § 6672, which imposes upon a responsible person who willfully fails to collect, account for, or pay over tax withheld from employee wages a penalty equal to the uncollected amount.

Where corporate withholdings are involved, a responsible person is normally a managing officer or employee of the corporation, but he need not be such an officer or employee, and there may be more than one responsible person. A corporate officer or employee is responsible in present context if he has significant, albeit not necessarily exclusive, authority in the field of corporate decision-making and action where taxes due the federal government are concerned; but he need not be an actual disbursing officer.

*Hartman v. United States*, 538 F.2d 1336, 1340 (8th Cir.1976).

A responsible person acts willfully within the meaning of section 6672 if he acts in such a manner that he knows or intends that, as a consequence of his conduct, withheld employment taxes "belonging to the government will not be paid over but will be used for other purposes."

*Kizzier v. United States*, 598 F.2d 1128, 1132 (8th Cir.1979) (quoting *Hartman*).

In its attempt to fit plaintiff within these definitions and thereby impose liability, the IRS apparently relied primarily on the fact that plaintiff was an authorized signatory on two checking accounts of Mr. Pro's, and he cosigned checks on those accounts. In addition, the government at some point learned that one payroll check from Mr. Pro's was signed by plaintiff alone, that plaintiff prepared Mr. Pro's withholding tax returns, and finally that plaintiff maintained Mr. Pro's checkbooks.

At first blush these facts might seem to support the government's position, but they fall short of the substantial showing necessary to demonstrate substantial justification. Careful analysis reveals the government's position had no reasonable basis in law and fact.

In the first place, the government never had any indication that plaintiff was a corporate officer or director. Although that does not foreclose the possibility that plaintiff might be a responsible person, it de-

prives the government of any reasonable inference of control which would follow from that fact alone. Thus, all other evidence of control must be scrutinized more carefully. For instance, plaintiff was an authorized signatory on Mr. Pro's checking accounts, yet with the exception of one check, plaintiff always cosigned those checks, a fact which indicates a restriction on his authority and discretion. As for the one check which bore only plaintiff's signature, the very fact that it was unique suggests it was the exception rather than the rule.[4] As for the fact that plaintiff prepared tax returns for Mr. Pro's, this evidence is perfectly consistent with plaintiff's role as an independent bookkeeper. It is certainly not extraordinary practice for a corporation to retain personnel who perform accounting and clerical functions yet possess little or no control over business operations.

Ultimately, two facts negate the reasonableness of the government's position in this case. First, plaintiff received no notice of the assessment and lien until they were faits accomplis. "The agency never presented plaintiff with specific findings of fact on which the proposed assessment was based." *Spang v. United States,* 533 F.Supp. 220, 226 (W.D.Okla.1982) (case arising out of assessment under 26 U.S.C. § 6672). *Accord, Moats,* 576 F.Supp. at 1541 (plaintiff "was thus deprived of any opportunity to demonstrate that the position of the IRS was factually and legally untenable"). Second, when plaintiff first learned of the assessment and lien, he promptly came forth bearing a notarized letter from the president of the corporation declaring that plaintiff was not a responsible person and further acknowledging the president's own liability for those taxes. The conscious and repeated disregard of this evidence at all levels of government demonstrates the unfairness and unreasonableness of the government's position.[5] It is far too late for the government now to attempt to rewrite the history of this case. Plaintiff is entitled to an award of attorneys' fees under 28 U.S.C. § 2412(d)(1)(A).

### D. Bad Faith

■ Plaintiff also seeks attorney's fees under that portion of the EAJA found in 28 U.S.C. § 2412(b), which renders the United States liable for attorney's fees and expenses "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." *See generally Fitzgerald v. Hampton,* 545 F.Supp. 53, 56 (D.D.C.1982). Although the general American rule prohibits the recovery of attorney's fees by a prevailing party, one exception to that rule is in cases in which "the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622–23, 44 L.Ed.2d 141 (1975). *See generally* Annot., 31 A.L.R.Fed. 833 (1977). Obviously, an award under this provision should be limited to exceptional cases. *See Satoskar v. Indiana Real Estate Commission,* 517 F.2d 696, 698 (7th Cir.) ("The standards for bad faith are necessarily stringent."), *cert. denied,* 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256 (1975). Moreover, although the government has the burden of showing substantial justification under 28 U.S.C. § 2412(d), it appears that under section 2412(b) plaintiff, as the party seeking relief, bears the burden of demonstrating defendant's bad faith. At the very least, an award of fees for bad faith is discretionary. *See* 31 A.L.R.Fed. at 843. *Cf.* 28 U.S.C. § 2412(d)(1)(A) (court "shall

---

**4.** In fact, plaintiff explains that his authority to sign checks alone was limited to unusual situations and required a corporate officer to authorize payment by telephone, which is what happened with this particular check.

**5.** The opinion of this court would not change even if limited to review of the government's litigation position. As discussed above, the evidence does not offer a reasonable basis for the conclusion that plaintiff was a responsible person. In addition, the lethargic pace of litigation and eventual settlement, as well as the government's resistance to plaintiff's reservation of rights under the EAJA, do not speak well for the government's litigation position.

award" fees to a prevailing party absent substantial justification for the government's position).

▮ It is the opinion of this court that defendant's actions, although deplorable, do not amount to bad faith or vexatious and wanton conduct. Instead, this case presents a classic example of bureaucratic indifference and callousness. This entire saga of taxpayer suffering could have been avoided or abbreviated if plaintiff had received actual notice of the proposed assessment and lien. Instead, the gears of bureaucracy creaked into motion without warning, and plaintiff became grist for the IRS mill. A reasonable approach in this situation would have been to send at least the first notice to plaintiff by both regular and certified mail, a procedure this court regularly employs when it is important that the recipient learn of a proposed action. Defendant's failure to follow such a simple procedure suggests a cavalier attitude toward matters of central importance to the financial well-being of taxpayers. Even more offensive is the refusal of anyone at the IRS to investigate plaintiff's documented claim that he was not a person responsible for payment of the withholding taxes. Fundamental due process means, at the very least, notice and an opportunity to be heard. In denying these rights to plaintiff, defendant acted without substantial justification and wronged this plaintiff; an award of fees and expenses under the EAJA is entirely justified.

## III. CALCULATION OF FEE REQUEST

Plaintiff's application is supported by affidavits and itemized statements detailing the fees and expenses incurred in this matter, in compliance with 28 U.S.C. § 2412(d)(1)(B). Some of the time spent on this case would ordinarily be billed at rates exceeding $75 per hour; however, attorney's fees awarded under 28 U.S.C. § 2412(d)(1)(A) shall not exceed $75 per hour except for special factors not here present. 28 U.S.C. § 2412(d)(2)(A)(ii). Accordingly, plaintiff has submitted calculations reflecting this ceiling.[6] The request can be summarized as follows:

| | |
|---|---|
| Attorney Time | $9500.52 |
| Nonattorney Time | 1262.05 |
| Expenses | 112.99 |
| TOTAL | $10,875.56 |

In addition, plaintiff states that the legal fees incurred in preparing a reply total $1544. Defendant has not challenged the reasonableness of the original request.

With respect to the original request, the court has reviewed the supporting documents and finds the time expended and hourly rates charged are reasonable and appropriate. With respect to the fees incurred in preparing a reply, plaintiff has not submitted supporting documents, so the court cannot determine whether this figure includes any time billed at hourly rates above $75. The court is prepared to award fees for a reply since it was necessary to refute defendant's frivolous assertion that plaintiff was not a prevailing party. The court will grant plaintiff ten days to submit a supplemental affidavit and billing statement. Assuming the request is reasonable, the court will then make a supplemental award.

## IV. CONCLUSION

For the reasons stated, it is

ORDERED that plaintiff's application for an award of attorney's fees and expenses is granted pursuant to 28 U.S.C. § 2412(d). Defendant is ordered to pay attorney's fees and expenses totaling $10,-875.56. It is further

ORDERED that within ten days counsel for plaintiff shall submit a supplemental affidavit and billing statement reflecting the time expended and fees charged in preparing the reply to the government's memorandum in opposition to plaintiff's fee ap-

---

6. Fee awards under 28 U.S.C. § 2412(b), such as plaintiff's alternative request based on defendant's alleged bad faith, are not limited to an hourly rate of $75. Since the court declines to award fees on this basis, plaintiff's alternative calculations reflecting higher hourly rates for certain attorneys have been disregarded.

plication. If desired, defendant may re-
spond to this supplemental filing within
seven days thereafter.